In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO.  09-13-00347-CV

**IN RE COMMITMENT OF LESTER WINKLE**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 09-06-06245 CV**

## OPINION

Lester Winkle appeals from his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013). In seven issues, Winkle claims the trial court committed reversible error by refusing to grant his motion for continuance; by allowing the State's expert to appear and testify before the jury when his expert was unavailable to personally appear for trial; by excluding the opinions of one of his expert witnesses; by denying his motion asking that the trial judge who presided over his trial be recused; by making comments in the jury's presence that were critical of

1

his attorney; by allowing the State's attorney to cross-examine his expert about some of the content on the expert's internet website; and by allowing the State's expert witness to testify that two other doctors, who did not testify during the trial, also found that he is sexually deviant and has a behavioral abnormality. We conclude that with respect to the rulings at issue, Winkle has not demonstrated that an abuse of discretion occurred; therefore, we affirm the trial court's judgment.

## Continuance

In issue one, Winkle argues the trial court abused its discretion by denying his motion for continuance. According to Winkle, the trial court erred by failing to grant a continuance when informed that his expert witness, Dr. John Tennison, was unavailable to testify during the dates the trial court selected for Winkle's trial.[1]

Following the jury's failure to reach a verdict after Winkle's second trial, the trial court conducted a hearing to select a date for another trial. After the trial court suggested that Winkle's trial could begin on either April 8, 2013, or April 15, 2013, Winkle's attorney advised the trial court that he was unavailable for trial on

---

[1]The pending appeal arises from Winkle's third civil-commitment trial. In Winkle's first trial, the jury found that he was a sexually violent predator, and the trial court rendered a judgment based on the jury's finding. That judgment was reversed because the trial court improperly excluded relevant expert testimony that would have assisted the trier of fact. *In re Commitment of Winkle*, 362 S.W.3d 241, 249-50 (Tex. App.—Beaumont 2012, pet. denied). The jury was unable to reach a verdict in Winkle's second trial, which began in late March 2013 and ended on April 2, 2013. Winkle's third trial commenced six days later on April 8, 2013.

April 15 due to a recently scheduled vacation, and that Dr. Tennison was not available for trial beginning on April 8. After noting that Winkle's attorney had not filed a timely vacation letter, the trial court gave Winkle's attorney a choice: to start the trial April 8 or April 15. When Winkle's attorney stated that he would not agree to begin trial on either of these dates, the trial court selected April 8 as the date to commence Winkle's trial.

During Winkle's third trial (the one that is the subject of the current appeal), two of Winkle's attorneys read Dr. Tennison's[2] testimony from the trial that had ended in a mistrial. The State followed a similar procedure in presenting the matters that it wanted the jury to consider concerning Dr. Tennison's testimony. Nonetheless, Winkle complains that he was deprived of the opportunity to present Dr. Tennison to the jury in person.

A ruling on a motion for continuance is reviewed on appeal under an abuse-of-discretion standard. *In re Commitment of Mitchell*, No. 09-07-002 CV, 2008 Tex. App. LEXIS 1999, at *4 (Tex. App.—Beaumont Mar. 20, 2008, pet. denied) (mem. op.). The trial in a case involving a sexually violent predator may be continued if the person the State is seeking to civilly commit would not be

---

[2]The direct and cross-examination testimony read to the jury consist of 170 pages of the reporter's record. One of Winkle's attorneys read the questions, and his other attorney read Dr. Tennison's answers.

3

substantially prejudiced by the continuance, and on a showing of good cause or on the judge's own motion in the due administration of justice. Tex. Health & Safety Code Ann. § 841.063 (West 2010). Under an abuse-of-discretion standard, reversible error arises if the trial court's decision is "'so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

When a witness is not available to testify at trial, the Rules of Evidence authorize trial courts to admit a witness's prior testimony when given at the same proceeding, and when the party against whom the evidence is offered had an opportunity to develop the testimony by direct, cross, or redirect examination. Tex. R. Evid. 804(b)(1) (providing a hearsay exception that applies to a witness's prior testimony in civil cases). Additionally, Winkle does not argue in his appeal that Dr. Tennison would have testified to additional facts at trial, nor did he raise this argument during the hearing on his motion to continue; instead, Winkle argues the trial court deprived the jury of the opportunity to view Dr. Tennison's face and to observe the "give and take" that occurs when a witness testifies in person.

In his brief, Winkle fails to cite any cases that provide direct support for his argument that denying a motion to continue constitutes an abuse of discretion

4

when the witness's testimony is presented to the jury by using earlier sworn testimony given in the same proceeding. The cases Winkle cites in his brief to support his argument, *Romero v. State* and *Smith v. State*, are distinguishable. *Romero v. State*, 173 S.W.3d 502 (Tex. Crim. App. 2005); *Smith v. State*, 88 S.W.3d 652 (Tex. App.—Tyler 2002, pet. ref'd). In *Romero*, the Court of Criminal Appeals addressed the defendant's claim that the trial court violated the defendant's rights under the Sixth Amendment's Confrontation Clause[3] by allowing a witness to testify while wearing a disguise during his trial. 173 S.W.3d at 503, 505. *Smith* is also a criminal case that concerned the defendant's rights under the Confrontation Clause. 88 S.W.3d at 658-60.

Winkle's case, however, is a civil and not a criminal matter. *See* Tex. Health & Safety Code Ann. § 841.146(b) (West 2010) ("Except as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases."). And, the Confrontation Clause applies to criminal cases but is not generally applied in SVP commitment cases. *See In re Commitment of Polk*, 187 S.W.3d 550, 556 (Tex. App.—Beaumont 2006, no pet.) (declining to extend the Sixth Amendment Confrontation Clause to civil commitment proceedings involving sexually violent predators).

---

[3]"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

Rule 252 of the Rules of Civil Procedure allows a party to request a continuance for want of testimony, but goes on to suggest that a court may consider the failure of a party to obtain a deposition of a witness residing within 100 miles of the courthouse as a want of diligence if the party has not diligently attempted to secure the personal attendance of such witness under the rules of law. *See* Tex. R. Civ. P. 252. Thus, Rule 252 implies that sworn testimony may be considered an adequate substitute for a witness's personal appearance in a civil trial. *See id.* Additionally, because Winkle failed to show that Dr. Tennison would have added any material testimony had he been personally available, Winkle has failed to show that he suffered any substantial prejudice based on the denial of his motion to continue. We hold that the trial court did not abuse its discretion by denying Winkle's motion to continue. *See id.; see also BMC Software*, 83 S.W.3d at 800. Issue one is overruled.

## Dr. Arambula

In issue two, Winkle argues the trial court abused its discretion by refusing to require the State to present its expert psychiatrist, Dr. Michael Arambula, by reading his prior testimony to the jury. According to Winkle, the trial court should have required the State to read its psychiatrist's prior testimony to the jury rather than allowing him to testify in person because that was the way Winkle presented

6

Dr. Tennison's testimony to the jury. Winkle provided no authority in his brief to supports this argument.

Rule 611(a) of the Rules of Evidence requires that a trial court "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence[.]" Tex. R. Evid. 611(a). The trial court properly allowed Dr. Arambula to testify in person before the jury, even if Winkle's expert could not. The record shows that the trial court exercised reasonable control by allowing Winkle to read Dr. Tennison's prior sworn testimony to the jury when he was unavailable to testify personally during the week that the trial occurred. By allowing Dr. Arambula to testify in person, the trial court did not abuse its discretion in controlling the mode of interrogation; therefore, we overrule issue two.

## Dr. Boccaccini

In issue three, Winkle argues that the trial court committed reversible error by refusing to allow the jury to consider the testimony of one of his experts, Dr. Marcus Boccaccini. Specifically, Winkle argues the trial court should have allowed the jury to consider Dr. Boccaccini's testimony about his special knowledge and experience that concerned actuarial studies and the risks of recidivism in sex offenders generally, as well as his opinion that actuarial test results provide a

7

superior basis than do clinical judgments in predicting whether a specific sex offender might reoffend.

Winkle's offer of proof reflects that Dr. Boccaccini is a research psychologist who has written an article addressing recidivism risks in a population of sex offenders involved in the Texas civil commitment process. Dr. Boccaccini's opinion that actuarial studies are better than clinical judgments at predicting which sex offenders may reoffend is also found within Winkle's offer of proof.

Generally, risk predictions are relevant in SVP proceedings because the State must prove that the defendant suffers from a behavioral abnormality that makes the defendant "likely to engage in a predatory act of sexual violence." *See* Tex. Health & Safety Code Ann. § 841.062 (West 2010), § 841.003(a) (West Supp. 2013). Consequently, the parties in SVP commitment proceedings often use experts who have utilized actuarial testing to support or negate claims that a given sex offender is likely to reoffend in a sexually violent manner. *See, e.g., In re Commitment of Bohannan*, 388 S.W.3d 296, 301 (Tex. 2012) (noting that in forming his opinion, the State's psychologist applied the Static-99, an actuarial test that is "widely used to evaluate a sexual offender's risk of recidivism"); *In re Commitment of Fisher*, 164 S.W.3d 637, 643 (Tex. 2005) (noting that one of the psychologists who testified for the State used actuarial variables, including Fisher's

8

score on the Static-99,[4] to predict the risk he would commit additional sexual offenses).

In Winkle's trial, the State called Dr. Arambula to support its claim that Winkle is a sexually violent predator who is likely to reoffend. A substantial portion of Dr. Arambula's testimony concerns the issue of risk.[5] During his testimony, Dr. Arambula acknowledged that Winkle's result on the Static-99 represents "pretty much the lowest you can score[;]" he subsequently explained that in his clinical opinion, Winkle's score on the Static-99 "greatly underestimated" the risk that Winkle would commit a future offense. Dr. Arambula suggested that Dr. Thorne, a psychologist who had evaluated Winkle but did not

---

[4]According to an article published in the journal sponsored by the Association for the Treatment of Sexual Abusers, the "Static-99 is the most commonly used actuarial scale for sex offenders, widely used in Canada and the United States for treatment planning, community supervision, and civil commitment evaluations." R. Karl Hanson, et al., *Quantifying the Relative Risk of Sex Offenders: Risk Ratios for Static-99R*, 25(5) Sexual Abuse: A Journal of Research & Treatment 482, 483 (Oct. 2013) (internal references omitted), *available at* http://www.static99.org/pdfdocs/Research-HansonEtAl(2013)Static-99RRiskRatios-2013-10-25.pdf (last visited May 6, 2014). According to Hanson, et al., "Actuarial risk tools are structured methods for combining risk factors into a total score (or risk categorization) and provide empirically derived estimates of recidivism probabilities. Risk tools are widely used in forensic psychology and corrections." *Id*. at 482 (internal references omitted).

[5]In the course of Dr. Arambula's testimony, which consumes 106 pages of the trial record, the word "risk" or "risks" is mentioned in either the question or in Dr. Arambula's answer 99 times.

testify during Winkle's trial, had previously testified that Winkle's Static-99 score "greatly underestimated his risk." According to Dr. Arambula, actuarial risk instruments like the Static-99 do not account for factors that he took into account in evaluating Winkle's risk of recidivism. Because Dr. Arambula thought that Winkle's test result on the Static-99 was not helpful, he decided to "toss it aside." Subsequently, Dr. Arambula described the Static-99, a test designed by Dr. Karl Hanson, as an "instrument [] not meant to predict anything. It is just to assess risk."

Based on the evidence before the jury, it is apparent that Dr. Tennison disagreed with Dr. Arambula regarding the significance of Winkle's score on the Static-99. Dr. Tennison, who placed significance on Winkle's low score on the Static-99, expressed the opinion that the chance Winkle would commit a future act of sexual violence was "probably less than 50 percent." According to Dr. Tennison, "the literature shows [that] the actuarial approaches developed from research are more likely to be accurate in terms of future probability as compared to structured or even unstructured clinical judgment."

Winkle complains that the trial court committed reversible error by excluding the testimony of Dr. Boccaccini, a research psychologist. According to the trial court, Dr. Boccaccini was not allowed to testify for three reasons: (1)Winkle had not shown that his testimony was reliable; (2) his testimony was

10

cumulative of the testimony the trial court expected would be presented through Dr. Tennison; and (3) his testimony was not relevant because Winkle was never examined by Dr. Boccaccini.

According to Winkle, Dr. Boccaccini should have been allowed to explain how an individual's test results on the Static-99[6] are used to assess whether an individual will likely reoffend. Winkle argues that Dr. Boccaccini should have been allowed to testify regarding four matters: (1) research showing that "no group of sex offenders [] reoffend[] at a rate high enough to justify using the high-risk/high-needs norms in the Static-99 manual[;]" (2) his study of 847 Texas offenders, which showed that "one of the 112 people with the same [Static-99] score as Mr. Winkle reoffended in five years[;]" (3) his calculations, based on his study, reflecting that the group he studied had a five year recidivism rate of .9 percent, which then increased to 1.8 percent based on the assumption that all of those who were civilly committed and could have been released were later released and that all of these then reoffended; and (4) his opinion that every study conducted to evaluate recidivism in sex offenders found that "the actuarial test works better than the clinician's judgment[.]"

---

[6]Dr. Arambula described actuarial testing as consisting of "a psychological test that looks at static risk factors like number of victims, number of arrests, age, those kinds of things."

11

Winkle contends that Dr. Boccaccini's testimony was relevant because it would have assisted the jury in determining a fact at issue—the likelihood that Winkle was likely to reoffend. Winkle argues that the testimony he proffered was reliable because "it was based on Boccaccini's own research," and because Dr. Boccaccini's opinions were based on actuarial tests results. Winkle also argues that Dr. Boccaccini's testimony would not have been needlessly cumulative, as it could have added "substantial weight" to his claim that the evidence showed he was not likely to reoffend.

Dr. Boccaccini's testimony related to the usefulness of actuarial studies for predicting the risk that sexually violent predators would reoffend. *See, e.g.*, *Bohannan*, 388 S.W.3d at 301 (noting that in forming their opinions, one of the State's experts, a psychologist, and the defendant's expert, a licensed sex offender treatment provider, had relied on the Static-99 in forming their opinions). We agree that Winkle's risk of reoffending was a fact of consequence as well as one of the core issues placed in dispute based on the evidence that was admitted during his trial. *See* Tex. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *Bohannan*, 388 S.W.3d at 303 (explaining that "[a]n

12

increased likelihood of misconduct indicates a predisposition, and a predisposition threatens increased likelihood"). We agree that Dr. Boccaccini's testimony should not have been excluded on the basis that it was not relevant.

We are also not persuaded that the excluded testimony at issue in the appeal was testimony that can be characterized as evidence that was needlessly cumulative. *See* Tex. R. Evid. 403 (allowing a trial court to exclude relevant evidence on special grounds that include "considerations of undue delay, or needless presentation of cumulative evidence"). Dr. Boccaccini is a psychologist, not a psychiatrist, and he had conducted research addressing recidivism risks in a population that appears relevant to evaluating risk predictions in a group with characteristics similar to Winkle's. Dr. Tennison, Winkle's other expert, did not indicate when he testified that he had been involved in this same type of primary research. While certain subjects that Dr. Boccaccini sought to address were addressed by Dr. Tennison, Dr. Boccaccini addressed the subject from the standpoint of a research psychologist, not from that of a psychiatrist. And, both types of experts, in addressing the risk of recidivism, addressed facts of consequence even though the two disciplines use different methodologies in doing so.

Texas law presumes that relevant evidence is admissible. *See* Tex. R. Evid. 402; *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 698 (Tex. App.— Dallas 1992, writ denied) ("All relevant evidence is admissible and should not be excluded without 'very good cause.'"). While Rule 403 of the Rules of Evidence allows the exclusion of relevant evidence on special grounds, it should be used sparingly. *See* Tex. R. Evid. 403; *Callewart*, 837 S.W.2d at 698-99 (concluding the trial court should have admitted the evidence at issue and that it was error to exclude it under Rule 403). Because Dr. Boccaccini had conducted primary research studying recidivism risks in sexually violent predators, his testimony addressed the quality of actuarial predictions compared to predictions that are based on clinical judgment, and Winkle's test result on the Static-99 placed Winkle in a group with a low risk of reoffending, the trial court erred by concluding that the excluded testimony was needlessly cumulative.

The trial court also excluded the testimony at issue on the basis that Winkle failed to meet his burden to demonstrate that Dr. Boccaccini's testimony was reliable. Rule 702, which concerns testimony by experts, requires a party to demonstrate that its expert testimony is reliable before it is admitted. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998) (adopting reliability and relevance prerequisites for expert opinions to be admissible under

14

Rule 702); *see* Tex. R. Evid. 702. Our review of the record shows that Winkle failed to provide the trial court with any written articles published by Dr. Boccaccini regarding the subject matter of his testimony, including the article on Boccaccini's study of the recidivism risks of sexually violent predators on which his testimony was largely based. Thus, the trial court was left without any guidance on the design of the study or any conclusions the study may have reached. Winkle did not prove through Dr. Boccaccini that he had published any articles that addressed recidivism risks. Nor did Winkle prove that Dr. Boccaccini had submitted or published any of his articles regarding his study of recidivism risks in peer reviewed journals. Finally, Winkle failed to provide the trial court with any evidence showing the methodology that Dr. Boccaccini had followed when he studied recidivism risks in Texas sex offenders.[7]

As the proponent of testimony that was excluded, Winkle bore the burden of establishing that the testimony was admissible. *See Gammill*, 972 S.W.2d at 726.

---

[7]We are not suggesting that such information does not exist, nor that had it been proven, that Dr. Boccaccini's opinions could not have been shown to be reliable. The information to determine the reliability of the excluded testimony that is now at issue was simply never introduced by Winkle's attorneys during the hearing, nor is the information in the record now before us; therefore, we are unable to determine whether the excluded testimony was reliable or not. We expressly do not resolve any question regarding Dr. Boccaccini's expertise on the issue of recidivism, the ability of actuarial tests to predict future recidivism, or the value of his study of Texas offenders with respect to the accuracy of an opinion about an individual's risk of committing a future sexually violent act.

Whether Dr. Boccaccini's conclusions are sound depends, in part, on the soundness of his methodology. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009) (instructing courts to examine "the principles, research, and methodology underlying the expert's conclusions and the manner in which the principles and methodologies are applied by the expert to reach the conclusions"). On this record, there is no objective source material to substantiate the methodology that Dr. Boccaccini followed or his assertion that his study demonstrated a low risk of recidivism among sex offenders. Nor can we determine whether Dr. Boccaccini's assertion that actuarial studies are better than clinical judgment in predicting recidivism risk represents an opinion that is generally accepted in the field of psychology. Although a substantial body of literature may exist concerning the accuracy of risk predictions made using actuarial tests versus those that are made following a clinical approach, Winkle failed to provide any of this material to assist the trial court in making a decision about admitting or excluding the testimony at issue. *See Coble v. State*, 330 S.W.3d 253, 278 n.63 (Tex. Crim. App. 2010) (noting a number of articles that have been published that address difficulties in predicting violent behavior). With respect to the excluded testimony at issue on appeal, the trial court was not required to accept the *ipse dixit* of the witness. *See Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) ("An expert's

16

simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts.").

We conclude that Winkle did not show the trial court that the excluded testimony was reliable. In turn, we cannot fault the trial court, which was not given sufficient information to admit the testimony at issue, for deciding to exclude Dr. Boccaccini's testimony during Winkle's trial. Because the trial court did not commit error by excluding the testimony of Dr. Boccaccini, issue three is overruled.

Recusal

In issue four, based on claims that Winkle raised in his motion to recuse, Winkle asserts that Judge Seiler should have been recused from presiding over his trial. *See* Tex. R. Civ. P. 18a (Recusal and Disqualification of Judges). In response to the motion, Judge Seiler referred the matter to the regional presiding judge, and the regional presiding judge assigned another judge to hear Winkle's motion. *See* Tex. R. Civ. P. 18a(f)(1)(B), (g)(1) (providing that if the trial judge declines to recuse, the trial judge shall refer the motion to the regional presiding judge, who shall set a hearing or assign the motion to another judge). After a hearing, the assigned judge denied Winkle's motion. We review the denial of a motion to recuse under an abuse of discretion standard. *See* Tex. R. Civ. P. 18a(j); *Wesbrook*

17

*v. State*, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000); *Black v. 7-Eleven Convenience Stores*, Nos. 03-12-00014-CV, 03-12-00015-CV, 2014 Tex. App. LEXIS 2641, at *12 (Tex. App.—Austin, Mar. 7, 2014, no pet.) (mem. op.).

Relying on the provisions of Rule 18b of the Texas Rules of Civil Procedure in his appeal, Winkle argues that the assigned judge abused her discretion when she denied his motion to recuse. Rule 18b provides, in pertinent part, that:

> (b) *Grounds for Recusal*. A judge must recuse in any proceeding in which:
>
> > (1) the judge's impartiality might reasonably be questioned; [or]
> >
> > (2) the judge has a personal bias or prejudice concerning the subject matter or a party[.]

Tex. R. Civ. P. 18b(b)(1), (2). Winkle's motion to recuse alleged that Judge Seiler appeared to be biased against him based on:

- A February 2013 docket control order signed by Judge Seiler that required Winkle to "'continue to reside in supervised housing at a Texas residential facility under contract with the Office of Violent Sex Offender Management pending retrial of this case[.]'" Judge Seiler rendered the docket control order after we reversed Winkle's first commitment trial[8] due to Judge

---

[8]*In re Commitment of Winkle*, 362 S.W.3d at 250.

Seiler's erroneous exclusion of the testimony of Dr. Tennison, Winkle's expert.

- News reports of Judge Seiler's comments at a meeting that occurred in September 2011, where it was reported that he said that everyone the State filed commitment proceedings against had been committed after their trials in his court, and also said that castration would not be successful in stopping predators from hurting others because the cause of the problem was mental illness.

- News reports about Judge Seiler's 2012 re-election campaign, which reported Judge Seiler's statement indicating he was "'pretty proud'" of his record in 2011, showing that of the forty commitment proceedings that year, all ended with judgments of commitment.

- Judge Seiler's alleged use, in his re-election campaign, of a sign that contained the following slogan: "A PROSECUTOR TO JUDGE THE PREDATORS."

- Judge Seiler's comments on homosexuality in Seth Hill's[9] commitment trial, which Winkle contends reveals Judge Seiler's bias against homosexuals.

_____

[9]*In re Commitment of Hill*, 334 S.W.3d 226, 228-29 (Tex. 2011) (holding that the trial court abused its discretion by refusing to allow Hill's attorneys to ask the jury panel if they could be fair to a person they believed to be a homosexual).

The standard for recusal is clear. When the party moving for recusal relies on bias to claim the trial judge should be recused, the party filing the motion to recuse must show that a reasonable person, with knowledge of the circumstances, would harbor doubts as to the impartiality of the trial judge, and that the bias is of such a nature and extent that allowing the judge to serve would deny the movant's right to receive due process of law. *See Rosas v. State*, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992)). On appeal, in reviewing the decision the assigned judge made on the motion to recuse, an appellate court should not reverse the assigned judge's ruling if that ruling is determined to have been in the zone of reasonable disagreement. *See Wesbrook*, 29 S.W.3d at 120-21.

Considering the evidence presented to the assigned judge during the hearing on the motion, we conclude that the assigned judge acted within her discretion when she denied Winkle's motion. With respect to the restrictions the trial court imposed on Winkle pending his retrial, the State acknowledged in oral argument that the trial court was not authorized by any statute to impose restrictions based on the results of a trial later overturned on appeal.[10] Nevertheless, the trial court's

---

[10]We express no opinion regarding the validity of the pretrial order the trial court signed placing various restrictions on Winkle pending his retrial. Winkle did not make that order the subject of an issue on appeal.

20

decision to impose pre-trial restrictions on Winkle was a judicial decision that the trial court made in the course of handling Winkle's case; therefore, the assigned judge could reasonably view the trial court's decision as the type of decision that does not evidence a disqualifying bias under Rule 18b(b)(2). *See Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011) (observing that recusal is not usually required when the party requesting recusal bases the motion on judicial rulings the trial court made in the course of the current or prior proceedings).

With respect to the slogan Judge Seiler chose to use on his campaign signs, while the assigned judge might have inferred bias from the slogan, she did not. In our view, the assigned judge could reasonably view the campaign slogan as referencing Judge Seiler's resume as a former prosecutor—not as a promise to act in a biased manner in deciding cases assigned to the court, or to act in a biased manner regarding any individual case.

The newspaper accounts of Judge Seiler's comments do not mention Winkle or Winkle's case, nor do they mention Judge Seiler's views about persons accused but not yet found by juries to be sexually violent predators. The comments at issue, as well as Judge Seiler's campaign slogan, are nevertheless the types of comments that some judges might have relied on to infer bias. At oral argument, when asked about Judge Seiler's campaign slogan and reported comments, the State's attorney

stated that she believed that the comments should not have been made. While Judge Seiler's campaign slogan, taken with the newspaper accounts of his comments, may raise a serious question about his fairness as a judicial officer, there was no evidence before the assigned judge that Judge Seiler had worked as a prosecutor in any matters related to SVP cases generally, had prosecuted any of the individuals involved in SVP cases for any crimes, or that Judge Seiler, in handling trials of sexually violent predators, had been unable to separate his role as a judicial official from that of his former role as an assistant prosecutor.

Winkle's motion to recuse also argues that Judge Seiler's remarks during voir dire in Seth Hill's trial reflect an inability to act as an impartial judicial officer in SVP cases generally and in Winkle's case. The assigned judge could reasonably view these remarks as a trial court's effort to restrict the attorneys to what the trial court viewed as proper questions in voir dire. We note that "[a]lthough intemperate remarks may well violate a rule of judicial conduct, such a violation does not necessarily mean that the judge should be recused." *Gaal*, 332 S.W.3d at 455 (citing *Wesbrook*, 29 S.W.3d at 121 and Tex. Code Jud. Conduct, Cannon 3, *reprinted* in Tex. Gov't Code Ann., tit. 2, subtit. G, app. B (West 2013)). Winkle was not being tried for being a homosexual, and the assigned judge could have reasonably concluded that the statements Judge Seiler made during the Seth Hill

22

trial were insufficient to reveal such a bias against persons accused of being sexually violent predators that he would be unable to give those persons fair and impartial trials.

In the case now before us, the assigned judge denied Winkle's motion to recuse. Winkle's motion and his argument at trial and on appeal rely on inferences from comments attributed to Judge Seiler that are not directed at Winkle or his specific case. However, due to the somewhat ambiguous nature of the reported comments, as well as the campaign slogan, the assigned judge could have reasonably inferred that the slogan does not show a bias to the degree that Judge Seiler was unable to provide Winkle with a fair trial. While another assigned judge might have reached a different conclusion, we conclude that the assigned judge's decision on Winkle's motion to recuse falls within the zone of reasonable disagreement. *See Wesbrook*, 29 S.W.3d at 120-21. For the reasons we have discussed, we overrule issue four.

Conduct/Comments by Trial Court

In issue five, Winkle complains that his case should be reversed because the trial court criticized various questions that Winkle's attorney asked the venire in voir dire. The record shows that during voir dire, the trial court criticized several

23

questions posed by counsel by suggesting that Winkle's counsel was wasting the jury's time by asking confusing and ineffective questions.

We review the trial court's allegedly improper comments as a question of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). We also examine the comments about which Winkle complains from the context of the entire record. *In re Commitment of Barbee*, 192 S.W.3d 835, 848 (Tex. App.—Beaumont 2006, no pet.)

A court has a significant amount of discretion in the manner it conducts a trial, and a trial court may "express itself in exercising this broad discretion." *Francis*, 46 S.W.3d at 240-41. "A trial court has inherent power to control the disposition of cases with economy of time and effort, exercising that power without bias and with patience, and in a manner that promotes confidence in the judge's impartiality." *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). "Generally, Texas law imputes good faith to a trial judge's judicial actions in controlling a trial." *Barbee*, 192 S.W.3d at 847. "'[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Francis*, 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

24

To preserve error with respect to complaints about a trial court's comments during a trial, the complaining party must object when the comment occurs and request an instruction, unless proper instruction cannot render the comment harmless. *Id.* at 241. Winkle did not ask the trial court to instruct the jury regarding any of the comments he complains about on appeal; instead, he objected and asked the trial court to grant a mistrial.

The comments at issue neither impugn the honesty of Winkle's counsel nor reveal what the trial court might have thought about the merits of Winkle's case. Instead, the comments being reviewed reflect the trial court's desire to timely dispose of the case, as well as the court's frustration over its perception that Winkle's counsel was asking questions that were not sufficiently tied to the issues in dispute. On request, the trial court could have instructed the jury to disregard its remarks that criticized counsel or counsel's questions. Such an instruction, in our opinion, was a sufficient remedy that would have cured any alleged prejudice that might relate to the comments at issue. Because appropriate instructions were capable of remedying any harm, and because Winkle failed to ask for instructions regarding the comments, he has not preserved his issue five complaints for our review. *See id.*; Tex. R. App. P. 33.1(a). Issue five is overruled.

## Scope of Cross-Examination

In issue six, Winkle complains that the "State should not have been permitted to cross-examine [Dr. Tennison] about his satirical website." Complaints regarding the evidence that a trial court allowed into evidence during trial are reviewed using an abuse-of-discretion standard. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (stating that a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion).

Under the Texas Rules of Evidence, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Tex. R. Evid. 611(b). Also, trial courts are to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. *Id.* 611(a). A witness may be impeached by proof of circumstances showing bias or interest. *See id.* 613(b). In its brief, the State asserts that the trial court properly allowed Dr. Tennison to be questioned regarding the content of his website because the content on Dr. Tennison's website was information that the jury had a right to use in weighing the probative value of Dr. Tennison's opinion that Winkle was not a sexually violent predator.

In our opinion, the State's cross-examination about the content at issue is at least arguably relevant. It has some tendency to reveal Dr. Tennison's attitude

about sexual matters and his views about the civil commitment process in general. While Dr. Tennison described portions of his website as "strictly satirical" and stated they were labeled as such, the jury was free to consider that Dr. Tennison's decision to publish such material on a public website revealed his perspective about sexual matters. Additionally, as the probative value of the testimony was arguably relevant to Dr. Tennison's views about the civil commitment process, the trial court could reasonably view the information within the website as information that was not unfairly prejudicial. *See* Tex. R. Evid. 403.

Given the scope of permissible cross-examination under Rule 611(b), the trial court's decision to allow the State to cross-examine Dr. Tennison about the content of his website was a matter within the trial court's discretion, as the matters at issue are arguably related to exploring Dr. Tennison's possible bias and motive. *See* Tex. R. Evid. 611(b); *Gannaway v. State*, 823 S.W.2d 675, 678 (Tex. App.—Dallas 1991, pet. ref'd) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)) ("The partiality of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affect the weight of his testimony.'"); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 711 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ("The motives that operate on the mind of a witness are relevant and

material, and the jury is entitled to know any fact that would tend to influence the witness'[s] testimony."). We overrule issue six.

Disclosure of Underlying Facts and Data

In issue seven, Winkle complains the trial court improperly allowed Dr. Arambula to testify that two other doctors, who did not testify during Winkle's retrial, found that Winkle is sexually deviant and has a behavioral abnormality. According to Winkle, because the opinions of the other doctors were in Winkle's records, the opinions were objectionable as hearsay and Dr. Arambula should not have been allowed to testify about them. According to Winkle, this part of Dr. Arambula's testimony was offered and admitted for its truth when it should have been excluded as inadmissible hearsay.

"We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily or unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Error may not be predicated upon the admission of evidence unless the party's substantial rights are affected. Tex. R. Evid. 103(a). Unless the error in admitting evidence probably caused the jury to

28

render an improper judgment, we will not reverse a jury's verdict for an alleged error in admitting evidence. *See* Tex. R. App. P. 44.1(a)(1).

While Winkle argues that Dr. Arambula's disclosure of the opinions of the other doctors was unduly prejudicial, the State contends that Winkle waived his objection by failing to object to the disclosure of the other opinions under Rule 705. *See* Tex. R. Evid. 705. Rule 705 allows a trial court to admit the underlying facts or data on which an expert has based his opinions. *See id.* 705(a); *In re Commitment of Tesson*, 413 S.W.3d 514, 520 (Tex. App.—Beaumont 2013, pet. denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d).

When Dr. Arambula was first asked generally about information that he had relied on in Winkle's records, Winkle requested that the trial court give the jury an instruction on hearsay. The trial court did so, instructing the jury on how an expert could use hearsay, explaining that "[s]uch evidence is admitted only for the purpose of showing the basis of the expert opinion." Later, when Dr. Arambula

29

explained that he had relied on the opinions of other doctors and disclosed those opinions to the jury, Winkle failed to request additional limiting instructions about the testimony he now complains of on appeal. Nevertheless, the jury charge instructed the jury about how it could properly use hearsay in records reviewed by an expert.

Winkle could have, but did not, request the opportunity to examine Dr. Arambula outside the jury's presence regarding such hearsay. *See id.* 705(b). An expert may disclose hearsay, unless it is shown to be unfairly prejudicial, and Winkle did not show that the opinions at issue were unreliable or that the records were inaccurate. The trial court also gave the jury several limiting instructions during the trial and in the charge explaining that the records used by experts were admitted to allow the jury to understand the basis for their opinions. Winkle has not shown that the trial court abused its discretion by admitting the evidence over his hearsay objection. *See id.* 705(d).

On appeal, Winkle asserts that the probative value of the hearsay opinions of the other doctors was outweighed by the danger that it would be used by the jury for its truth. However, the record does not show that Winkle asked the trial court to balance the probative value of these opinions against the risk that the jury would use them for their truth. To place the trial court on notice regarding his desire for

the court to balance the danger of the jury's use of the hearsay opinions of the other doctors, Winkle should have requested the trial court to perform a balancing test when Dr. Arambula disclosed the opinions at issue. *See id.* (requiring courts to exclude the underlying facts or data used by an expert if the danger that the evidence will be used for a purpose other than as explanation or support outweighs the value of the information as an explanation or support). Without such a request, Winkle failed to give the trial court an opportunity to decide whether the danger of admitting the opinions outweighed their probative value. We conclude that this part of Winkle's argument was not properly preserved for our review on appeal. *See* Tex. R. App. P. 33.1(a) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request).

In light of the limiting instructions the trial court gave the jury during trial and in the charge regarding the use of hearsay by experts, we are not persuaded that the trial court erred by allowing Dr. Arambula to reveal the opinions of the other doctors when he testified. *See Tesson*, 413 S.W.3d at 520; *see also In re Commitment of Day*, 342 S.W.3d 193, 198-99 (Tex. App.—Beaumont 2011, pet. denied). The record as a whole, given the instructions to the jury, does not support

Winkle's argument that the jury relied on hearsay in deciding that Winkle is a sexually violent predator. *See Tesson*, 413 S.W.3d at 521. Issue seven is overruled.

Because Winkle is not entitled to the relief he has requested on any of his issues, the trial court's judgment is affirmed.

AFFIRMED.

_____

HOLLIS HORTON
Justice

Submitted on February 27, 2014
Opinion Delivered May 22, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

32