In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00131-CV

_____

IN RE COMMITMENT OF STEVEN RENE ALVAREZ

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 14-07-07340 CV

MEMORANDUM OPINION

Steven Rene Alvarez appeals from a judgment in a civil commitment case in which the jury found him to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2015) (the SVP statute). In five issues, Alvarez argues that (1) the judge who conducted the recusal hearing committed error by denying his motion to recuse; (2) the trial court erred by denying Alvarez's motion to set aside an order authorizing the release of his substance abuse treatment records; (3) the trial court erred by overruling Alvarez's objection to testimony that he claims amounted to a comment on his truthfulness;

1

(4) the trial court erred by admitting adjudications in Alvarez's juvenile cases when the documents related to the adjudications were not properly authenticated; and (5) the trial court erred by allowing the jury, in determining whether Alvarez currently has a behavioral abnormality, to consider the documents that he argues were inadmissible and that related to his juvenile adjudications. We conclude that Alvarez's issues are either without merit, or that Alvarez has not established the rulings were harmful given that substantially all of the information about his juvenile history was admitted through the testimony of the expert witnesses who testified in his case. Therefore, we affirm the trial court's judgment, and its order of civil commitment.

## Denial of Motion to Recuse

Prior to trial, Alvarez filed a motion to recuse Judge Michael T. Seiler, the judge who subsequently presided over the jury proceeding that Alvarez seeks to overturn in his appeal. In his motion, Alvarez claimed that, given Judge Seiler's recusal in another civil commitment proceeding against another individual, Judge Seiler should be recused because his impartiality might reasonably be questioned. *See generally* Tex. R. Civ. P. 18b(b)(1) (providing that a judge must be recused in any proceeding in which "the judge's impartiality might reasonably be questioned"). During the recusal hearing, Alvarez argued that Judge Seiler "has a

2

personal bias or prejudice, against the subject matter in this case, based upon the nature of [Alvarez's] criminal history." *See generally* Tex. R. Civ. P. 18b(b)(2) (requiring a judge to be recused in any proceeding in which "the judge has a personal bias or prejudice concerning the subject matter or a party").

After Alvarez filed his motion, Judge Seiler referred the motion to the presiding administrative judge for the Second Administrative Judicial Region. *See* Tex. R. Civ. P. 18a(f)(2)(A) (providing for the duties of the judge in responding to the filing of a motion to recuse). The administrative judge assigned Judge Chap Cain to hear Alvarez's motion, and Judge Cain conducted a joint hearing in a group of four cases, including this one, on motions seeking Judge Seiler's recusal. At the conclusion of the joint hearing, Judge Cain denied all four of the motions.

In his appeal, Alvarez argues that Judge Cain's denial of his motion was an abuse of discretion. *See* Tex. R. Civ. P. 18a(j)(1)(A) (mandating that an abuse-of-discretion standard be used to review rulings on motion to recuse). Alvarez argues that we should consider, *de novo*, whether Judge Seiler's public comments required his recusal in light of Judge Cain's conclusion that Judge Seiler's public comments were insufficient to meet the requirements of Rule 18b(b)(1) and Rule 18b(b)(2), which provide the standards that govern a judge's recusal.

A decision by a judge to deny a motion to recuse is reviewed using an abuse-of-discretion standard. Tex. R. Civ. P. 18a(j)(1)(A). In addition to the evidence that was admitted during the recusal hearing, Alvarez suggests that we consider a State Commission on Judicial Conduct decision that concerned Judge Seiler's conduct. *See State Comm'n on Judicial Conduct, Public Reprimand and Order of Additional Education*, CJC Nos. 12-0737-DI; 12-1143-DI; 13-0027-DI; 13-0235-DI; 13-0373-DI; 15-0129-DI; 15-0374 (April 24, 2015). We will not consider this decision or any other evidence not admitted in the hearing in our review because an appeal from a recusal ruling is limited to the record that the parties created at the hearing. *In re Commitment of Terry*, No. 09-15-00053-CV, 2015 WL 5262186, at *3 (Tex. App.—Beaumont Sept. 10, 2015, pet. denied) (mem. op.).

On appeal, Alvarez argues that Judge Cain abused his discretion by parsing the evidence and examining each piece of evidence individually in reaching his conclusions regarding the impact of Judge Seiler's various statements that Alvarez contends revealed his disqualifying bias. Alvarez suggests that Judge Cain should have determined whether Judge Seiler was biased from a studied analysis of all of the circumstances as a whole.

However, the record does not show that Judge Cain failed to consider the evidence presented during the hearing as a whole. *See In re Commitment of*

4

*McCall*, No. 09-15-00094-CV, 2016 WL 4040122, at *4 (Tex. App.—Beaumont July 28, 2016, no pet. h.). Instead, the record reflects that before ruling on Alvarez's motion, Judge Cain discussed each of the exhibits that had been admitted into evidence. The comments that Judge Cain made during the hearing reflect a detailed and studied evaluation about why Judge Cain thought that Judge Seiler's public statements would not impact the public's perception regarding Judge Seiler's ability to act fairly in the four cases that were the subject of the combined hearing. While a number of Judge Cain's comments were directed at individual statements made by Judge Seiler, it is apparent that Judge Cain was attempting to explain why the comments individually and collectively did not show that Judge Seiler would not be able to preside in a fair manner over the four cases that were the subject of the recusal hearing. Given the record as a whole, we are not persuaded that Judge Cain failed to apply the proper legal standard in evaluating the evidence that was before him in the recusal hearing.

Alvarez also argues that Judge Cain erred by denying his motion to recuse. To carry his burden at the hearing, Alvarez was required to demonstrate that

> a reasonable person, with knowledge of the circumstances, would harbor doubts as to the impartiality of the trial judge, and that the bias is of such a nature and extent that allowing the judge to serve would deny the movant's right to receive due process of law.

5

*In re Commitment of Winkle*, 434 S.W.3d 300, 311 (Tex. App.—Beaumont 2014, pet. denied). In reviewing an order on a motion to recuse, we will affirm the recusal judge's ruling if it falls within the zone of reasonable disagreement. *Id.*

In his motion, Alvarez relied on various comments that Judge Seiler made at a March 2013 meeting of the Texas Patriots PAC, a September 2011 newspaper account of a speech that Judge Seiler gave at a meeting of the Montgomery County Republican Women, a slogan on a sign that Judge Seiler used in his 2008 campaign for office as a district judge on the 435th District Court, a newspaper article published in November 2011 announcing Judge Seiler's intent to seek re-election, various campaign material from Judge Seiler's 2008 campaign that included information about why Judge Seiler believed he was the best qualified candidate for the job, and evidence reflecting that motions to recuse Judge Seiler in other cases, which involved SVP defendants other than Alvarez, were granted. Judge Cain's comments during the recusal hearing reflect that he considered many of Judge Seiler's statements about his experience as the types of statements candidates typically make when running for elective office. During the hearing, Judge Cain explained that judicial candidates may contrast their experience with that of their opponents, and Judge Cain generally referenced Judge Seiler's statements as matters that consisted of "political speech." As to the statements that

6

Judge Seiler made while running for office, Judge Cain's view that Judge Seiler's public statements would not be viewed by the public as Judge Seiler's promise to act as a prosecutor, if elected, is a reasonable view of the statements given the context in which they were made. *See In re Winkle*, 434 S.W.3d at 312 (with respect to a campaign sign used by Judge Seiler, concluding that the judge who held that hearing on a motion to recuse had not abused her discretion by refusing the claim that the language used in the sign represented the candidate's "promise to act in a biased manner in deciding cases assigned to the court, or to act in a biased manner regarding any individual case").

We have previously rejected similar arguments about the same statements made by Judge Seiler in other appeals complaining about the denial of motions seeking Judge Seiler's recusal. *See McCall*, 2016 WL 4040122, at *3; *In re Commitment of Lewis*, \_\_\_\_ S.W. \_\_\_\_, No. 09-15-00360-CV, 2016 WL 2766069, at *1 (Tex. App.—Beaumont May 12, 2016, pet. filed); *In re Commitment of Massingill,* No. 09-15-00365-CV, 2016 WL 2594720, at *1 (Tex. App.—Beaumont May 5, 2016, pet. filed) (mem. op.); *In re Commitment of Dupree*, No. 09-15-00269-CV, 2016 WL 1600763, at *2 (Tex. App.—Beaumont April 21, 2016, pet. filed) (mem. op; ); *Terry*, 2015 WL 5262186, at *2. The arguments that Alvarez advances fail for the same reason: the recusal judge's ruling falls within

the zone of reasonable disagreement regarding the import of the statements that Judge Seiler was shown to have made that were admitted into evidence during the hearing. As a factual issue or a matter committed to the recusal judge's discretion—what members of the public would reasonably believe about a judge's bias, prejudice, or ability to be impartial based on the facts and circumstances relevant to the judge's conduct—the appeals court cannot disturb the decision made by the judge that heard the motion to recuse unless the decision on the motion is shown to have been arbitrary and unreasonable. *McCall*, 2016 WL 4040122, at *4. Because Alvarez has not shown that Judge Cain's decision on the motion to recuse was either arbitrary or unreasonable, issue one is overruled.

### Denial of Motion to Exclude Treatment Records

"[O]n its own motion and pursuant to 42 C.F.R. § 2.65[,]" Judge Seiler ordered the custodian of the Rehabilitation Programs Division of the Texas Department of Criminal Justice to release Alvarez's substance-abuse-treatment records to the Civil Division of the Special Prosecution Unit. Alvarez filed a pre-trial motion asking that Judge Seiler set aside the order authorizing the release of his substance-abuse-treatment records, and he asked that Judge Seiler exclude the records from evidence in his trial. In response, the State argued that Judge Seiler was authorized to order the subject records released based on subsections

841.142(d) and 841.142(e) of the Texas Health and Safety Code. *See generally* Tex. Health & Safety Code Ann. § 841.142 (West Supp. 2015). Several days before trial, the trial court denied Alvarez's motion.

The testimony the jury heard during Alvarez's trial suggests that the expert witnesses who testified had reviewed prison records that referenced Alvarez's problem of substance abuse. For instance, the record of the trial includes testimony indicating that Alvarez first tried marijuana at age eight, he used codeine without a lawful prescription, he tested positive for using drugs while he was on community supervision, and he received drug treatment while on community supervision. The State's expert witness, Dr. David Self, testified that Alvarez's records indicated that Alvarez had been exposed to marijuana in his childhood, and Dr. Self stated that in his opinion, Alvarez has a lifelong pattern of abusing illicit substances. Moreover, the appellate record contains no evidence indicating that Alvarez's substance-abuse-treatment records were obtained by the Special Prosecution Unit from the Texas Department of Criminal Justice based on the trial court's order, as they may have been released to the attorneys under some other statute, such as section 841.142 of the Texas Health and Safety Code. *See id.* We conclude that Alvarez has failed to demonstrate that the trial court's refusal to rescind its order

9

regarding his substance-abuse-treatment records probably caused the jury to render an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue two.

Expert Opinion Testimony

During the trial, Dr. Self testified that Alvarez gave him different accounts concerning the background of one of his sexual offenses. When Dr. Self indicated that the variance in Alvarez's account regarding the offense was significant, Alvarez objected, complaining that Dr. Self's response represented "an improper comment on the truthfulness of another person." Subsequently, Dr. Self added, without objection, that the conflict raised in his mind the "possibility of a conflation of events, I mean, that there may have been more than one occasion in which this sort of thing happened and that he tells it differently." Even later, Dr. Self explained that Alvarez had not shared the thoughts that Alvarez had regarding his prior offense, a circumstance that Dr. Self believed was important in his evaluation of the extent to which Alvarez could control his condition.

In his appeal, Alvarez argues that Dr. Self's testimony regarding Alvarez's truthfulness was not admissible as expert testimony. *Compare* Tex. R. Evid. 702 (An expert witness "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.") *with Yount v.*

10

*State,* 872 S.W.2d 706, 712 (Tex. Crim. App. 1993) ("Rule 702 does not permit an expert to give an opinion that the complainant or class of persons to which the complainant belongs is truthful."). But, we have previously explained that

> [W]here the expert's testimony concerns a mental condition, the understanding of which is beyond the comprehension and understanding of the average person, it does not invade the province of the jury for the expert to use the facts and the defendant's relation to them in pursuing and determining the medical diagnosis and explaining that diagnosis to the jury.

*In re Commitment of Pettis*, No. 09-15-00173-CV, 2016 WL 3356569, at *2 (Tex. App.—Beaumont June 16, 2016, no pet. h.) (mem. op.). In this case, Dr. Self's testimony concerns his explanation of the role that the inconsistency in Alvarez's account had on his opinions. Given the context of Dr. Self's testimony, the trial court did not abuse its discretion by ruling that the testimony would be helpful to the jury's understanding of Dr. Self's testimony. *See* Tex. R. Evid. 702. Issue three is overruled.

## Authentication of Juvenile Records

In issue four, Alvarez complains the trial court erred in admitting into evidence various records that related to matters that occurred when Alvarez was a juvenile. During a pretrial hearing, records that the trial court preadmitted included various judgments in cases filed against Alvarez when he was a juvenile. During the pretrial hearing, Alvarez objected that the documents evidencing his

11

adjudications as a juvenile were not properly authenticated. In response, the State argued that the documents included proper certifications, although it is apparent from the record before us in the appeal that the State and the trial court were looking at copies of documents in the clerk's records, as those are the documents that contain the certifications that the parties were discussing in the hearing. *See generally* Tex. R. Evid. 902(4). During the pretrial hearing, Alvarez admitted that some of the documents contained the district clerk's certification. At that point, Alvarez's argument changed, and he claimed that in addition to the district clerk's certification, authenticating the records required the State to produce a business records affidavit to prove that the documents were business records. *See* Tex. R. Evid. 902(10) (allowing a business record to be admitted as a self-authentication document when accompanied by an affidavit that is in the form identified in the rule).

In the appeal, Alvarez argues the exhibits containing his juvenile records did not include a proper certification by the clerk indicating they were true and correct copies of records from the clerk's file. However, even if we assume the trial court erred in admitting the juvenile adjudications that did not have a certification by the district clerk into evidence, those records were merely cumulative of other testimony that revealed the offenses Alvarez committed when he was a juvenile.

For example, Dr. Self testified in the trial without objection that: (1) he examined Alvarez's juvenile records; (2) that he relied on the information in the records in forming his opinion in the case; (3) that Alvarez's juvenile history included a robbery, a burglary of a habitation, and a burglary of a motor vehicle; and (4) that Alvarez was placed on probation and placed in a treatment-center-like environment on two occasions, and placed in a juvenile incarceration facility before being paroled. In summary, the records that Alvarez complains about on appeal are consistent with the information the jury heard regarding Alvarez's history of committing a variety of offenses while he was a juvenile. Since substantially similar evidence regarding Alvarez's juvenile history was admitted without objection during the trial, we hold the errors, if any, in admitting the adjudications themselves were harmless. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue four.

Impeachment with Juvenile Adjudications

In issue five, Alvarez contends that his juvenile records were improperly used as impeachment evidence in violation of Rule 609(d) of the Texas Rules of Evidence. Rule 609(d) generally prohibits the use of juvenile adjudications in civil cases. *See* Tex. R. Evid. 609(d). In response, the State argues that the records were admissible for a proper purpose other than impeachment, contending that the records were relevant to proving that Alvarez has a behavioral abnormality. In the

13

pretrial hearing, the State represented that it would not use the records of the juvenile proceedings as impeachment evidence.

During the trial, when the State questioned Alvarez, the State's attorney asked Alvarez questions about his criminal history as a juvenile. Alvarez objected that the State was improperly questioning Alvarez about his juvenile history to impeach him. Given the information the trial court was given in the pretrial hearing about the relevance of Alvarez's juvenile history to the diagnosis that the State intended to elicit from its expert, Dr. Self, the trial court overruled the objection, advising Alvarez to renew his objection if Dr. Self failed to connect the testimony to his opinions in the case. When the State's attorney asked Alvarez about his juvenile history, Alvarez did not request that the court give the jury a limiting instruction to restrict the jury from using the evidence to impeach Alvarez's credibility as a witness. *See* Tex. R. Evid. 105(b)(1); Tex. R. Evid. 705(d).

According to Alvarez, because he took the stand, his credibility was inherently at issue and the State attacked it by asking him about his juvenile record. Alvarez suggests that the facts surrounding the conduct disorder that he had when he was a juvenile were not probative of whether he currently has a behavioral abnormality, and he suggests that the evidence about his criminal behavior while a

14

juvenile led the jury to commit him based on his record of bad conduct as a juvenile.

The record in this case shows that the experts who testified on the issue of whether Alvarez has a behavioral abnormality considered Alvarez's juvenile history in forming their opinions. *See generally* Tex. R. Evid. 702-705. For example, Dr. Self testified that lifestyle instability and criminality is one of the factors he considers in assessing a person's risk of committing new sexual offenses. According to Dr. Self, early onset of criminal behavior is a factor that affects recidivism. Dr. Self explained that a history of juvenile delinquency is a risk factor to be regarded in assessing a person's risk of reoffending, explaining that bad behavior before a person is fifteen years old is indicative of a condition that he identified as a conduct disorder. Dr. Self explained that Alvarez had been diagnosed with having a conduct disorder in his youth. Dr. Self also diagnosed Alvarez with antisocial personality disorder, another factor that he indicated that research showed resulted in an increase in the risk of recidivism. According to Dr. Self, Alvarez's history showed Alvarez has disorders that had historically caused him to habitually violate the rights of others due to his inability to conform his behavior to ordinary standards.

Dr. Marisa Mauro, a psychologist called by Alvarez, used an actuarial approach in assessing risk in Alvarez's civil commitment case. According to Dr. Mauro, a diagnosis of antisocial personality disorder in an adult requires that the adult have a history indicating signs of conduct disorder prior to age fifteen. In cross-examination by the State, Dr. Mauro agreed that Alvarez has a juvenile court adjudication for robbery, that juvenile adjudications count in scoring actuarial instruments that measure risk of recidivism, and that because Alvarez had multiple juvenile adjudications, she should have scored him differently on two of the actuarial tests that he took, the Static 99R and the Static 2002R.

When evidence that a party tenders can be properly considered only for a limited purpose, but it is inadmissible for other purposes, the party opposing the introduction of the evidence has the burden of securing a limiting instruction so the jury will not consider the evidence improperly for the wrong purpose. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 642 (Tex. 1987). In Alvarez's case, Alvarez's juvenile adjudications could not properly be used as impeachment evidence. *See* Tex. R. Evid. 609(d). Nonetheless, the experts properly relied on Alvarez's juvenile cases in forming their opinions, and the testimony admitted in the trial indicates that those cases were relevant to the opinions expressed by both of the experts who testified during the trial. *See* Tex. R. Evid. 702-705. Alvarez did not

16

request an instruction that the juvenile adjudications should not be considered when the jury assessed the credibility of Alvarez's testimony. *See* Tex. R. Evid. 105(a).

In closing argument, the State did not suggest that Alvarez was not a credible witness because he had engaged in delinquent behavior as a youth. Instead, the State confined its closing remarks about the juvenile adjudications at issue to the purposes for which the adjudications had properly been admitted. *See* Tex. R. Evid. 105(b)(1). In the absence of Alvarez having requested a limiting instruction, and assuming without deciding that Alvarez did not waive his objection to the State asking Alvarez about his juvenile history, the alleged error was not harmful when substantially all of the matters relevant to the juvenile adjudications were addressed by the experts during the course of the trial. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue five. Having overruled all of Alvarez's issues, we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
HOLLIS HORTON
Justice


Submitted on December 4, 2015
Opinion Delivered August 25, 2016

Before McKeithen, C.J., Kreger and Horton, JJ.