**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed July 24, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00582-CV

---

## SHAGUFTA KHAN, Appellant

## V.

## SALIM VALLIANI AND AGHA JUICE AND CAFE, Appellees

---

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 10-DCV-185357**

---

## O P I N I O N

Shagufta Khan filed this personal injury action, claiming that Salim Valliani had sexually assaulted her when she was fifteen years old. The trial court dismissed the suit with prejudice based on a finding that Khan had "failed to follow the Court's Orders on several occasions." We consider two issues on appeal: (1) whether the trial court abused its discretion by assessing a $400 sanction for discovery abuse against Khan, and (2) whether the court acted within

its authority by dismissing the suit with prejudice when Khan failed to pay the $400. We conclude that the trial court did not abuse its discretion by assessing the discovery sanction because there is evidence that Khan had abused the discovery process. However, we also conclude that the trial court had no authority, inherent or statutory, to dismiss the suit with prejudice upon Khan's failure to pay the sanction. We affirm the discovery sanction, but we reverse the trial court's order dismissing Khan's suit and remand for additional proceedings consistent with this opinion.

## BACKGROUND

This appeal focuses on a contentious discovery dispute over one of Khan's personal journals. Khan testified during a deposition that she had a journal in her possession and that it contained writings about her alleged sexual assault. After the deposition, Valliani served a request for production, asking for the journal because it was relevant to the suit. In response to the request, Khan's attorney, Alphonsus Ezeoke, filed the following equivocal objection: "Plaintiff objects to this request because the information is intrusive and irrelevant. Plaintiff does not have the document responsive to this request."

Defense counsel responded to Ezeoke by written letter, asking his client to comply with the discovery request because the response "is in direct conflict with our understanding." Defense counsel stated, "It is our understanding that the Plaintiff is in possession of her journals." Defense counsel warned that he would file a motion to compel if the journal was not produced. Ezeoke responded to the warning as follows: "You may have to file the motion with the court because my client does not have the requested information. Furthermore, the diary contains other personal information that cannot and will not be provided to your perverted client."

2

Defense counsel accepted Ezeoke's invitation and filed the motion to compel, asserting that Khan was making inconsistent representations regarding the existence of the journal. The motion was brought under Rule 215 and requested an award of attorney's fees. Ezeoke filed another equivocal response, reciting simultaneously that the journal "does not exist" and that its contents are "irrelevant."

The trial court conducted a hearing on January 28, 2013, which only the attorneys attended. Ezeoke asserted that the request for production was overbroad because defense counsel was seeking all of Khan's journals, including those that predated the assault. The trial court rejected this characterization, stating that the discovery request was specifically tailored to "any journals, diaries, and/or writings reflecting the incident made the basis of this lawsuit and/or the injuries for which Plaintiff seeks recovery."

Ezeoke then responded that his client had lost the one journal that described the alleged assault. Ezeoke claimed that Khan had shown him another journal, but that it did not describe the assault. When asked to account for her deposition testimony, Ezeoke explained that Khan was confused. The trial court instructed Ezeoke that he needed to either "produce the diary that she's talking about in the deposition, or you can bring her down here, and I'll put her on the stand and let [defense counsel] question her about why she answered the question the way she did." The court then granted the motion to compel and ordered Khan to comply with the discovery request in a month's time. To compensate Valliani for the time spent prosecuting the motion to compel, the court also ordered Khan to pay $400 in attorney's fees to opposing counsel. The order did not specify the payment of the fees by any set time.

When Khan did not comply with the trial court's order, Valliani moved the court to hold her in contempt. The motion was brought under Rule 215, just as before. Valliani also requested a show cause order, and asked the court to sanction Khan by assessing additional attorney's fees against her. Ezeoke filed a response to the motion saying that Khan had searched for her journals but could not find them. Ezeoke did not explain why the $400 had not been paid or make any argument that the trial court's order was unclear as to the date of payment.

The trial court conducted a contempt hearing on April 8, 2013. During the hearing, Khan personally testified that she no longer writes in journals and that she could not comply with the court's order because all of her journals have been lost. Khan suggested that her younger sister might have taken the journals and irretrievably misplaced them.

Khan also testified that she could not pay the $400 in attorney's fees because of other financial obligations. Khan stated that she is currently paying off a car note and college tuition, and that any extra money she gets from her job is sent to her mother because her father is in the hospital and unable to work. The trial court suggested that Khan should give up her cell phone and use the money from that bill to pay the attorney's fees. Khan testified that her cell phone bill was approximately fifty dollars per month.

Ezeoke argued during the hearing that the court should not have sanctioned Khan because her discovery response was true. The court refused to reconsider the sanction, saying that defense counsel was "entitled on behalf of his client to get to the bottom of [Khan's deposition testimony] and find out what happened to those diaries." Ezeoke then argued that the $400 award was a judgment of the court, and that Valliani should attempt to collect it himself. Ezeoke objected that the court was "trying to enforce his attorney's fee for him." The court responded that "these

4

are attorney's fees for contempt of court," and that Khan is "either going to pay the $400 or I'm going to dismiss her lawsuit." The court ordered payment by June 7, 2013, affording Khan roughly two months to collect the money.

The court did not assess any additional sanctions against Khan, citing her testimony that she did not have the journals and her inability to comply with the motion to compel. Valliani requested a spoliation instruction for the destruction of the journals, which the court refused. The court ruled orally, however, that it would exclude any testimony regarding the journals when the case proceeded to trial. This ruling was noted on the court's docket sheet but it was not included in the order. The order also contained no warning that Khan's suit would be dismissed for failing to pay the fee.

When Khan did not pay the $400 by the required date, Valliani filed a motion to dismiss the lawsuit. Valliani referenced the previous order and the court's oral admonishment that the case would be dismissed if Khan did not pay the fee. Valliani did not cite any specific authority for the dismissal.

Ezeoke moved for a continuance, claiming that he needed to make an emergency trip to Africa. Ezeoke did not explain Khan's failure to pay. Instead, he repeated his argument that the sanction of $400 was unfair when Khan never had the journal. Ezeoke's law partner appeared at the dismissal hearing and argued the continuance, but the court never made a ruling. When it determined that Khan had not paid the $400 in attorney's fees, the court dismissed her suit with prejudice. The only finding recited in the order is that Khan "failed to follow the Court's Orders on several occasions."

## ISSUES PRESENTED

Khan presents three issues on appeal. In her first issue, Khan asserts that the trial court's dismissal order was an impermissible "death penalty" sanction. In her second issue, Khan asserts that the trial court erred by failing to consider the motion for continuance. In her third issue, she asserts that the trial court abused its discretion by ordering her to pay $400 as a discovery sanction. We begin with the third issue.

## DISCOVERY SANCTION

We review a trial court's decision to impose sanctions for an abuse of discretion. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

A trial court may impose sanctions on any party that abuses the discovery process. *See* Tex. R. Civ. P. 215. If a party fails to comply with proper discovery requests, the court may enter orders "as are just," including an order for attorney's fees. *See* Tex. R. Civ. P. 215.2(b)(8). For a sanction to be just, it must bear a direct relationship to the offensive conduct, and it must not be excessive. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).

A sanction that relates directly to the offensive conduct is one that is directed against the abuse and toward remedying the prejudice caused to the innocent party. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam). The sanction, in other words, must be visited upon the offender, and the court must

6

attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both counsel and the party together. *Id.*

When assessing excessiveness, the punishment should always fit the crime, and sanctions should be no more severe than necessary to further the purposes of sanctions generally. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A court must consider the availability of appropriate lesser sanctions, and, in all but the most egregious and exceptional cases, the court must first assess lesser sanctions before resorting to case-determinative or death penalty sanctions. *Id.* at 842.

The trial court imposed the discovery sanction when it granted the motion to compel. When deciding whether the trial court abused its discretion by imposing the discovery sanction, we consider only the record at the time of the trial court's ruling, and not the evidence that was produced thereafter.

The evidence attached to the motion to compel consisted of an excerpt from Khan's deposition, in which Khan had testified that she had "a couple journals," including one where she had written about the alleged assault. The evidence also consisted of Khan's discovery responses, which contained equivocal statements regarding the existence of the requested journal. In a single letter, Khan's attorney, Ezeoke, ambiguously represented that Khan did not have the journal, and that she would not produce the journal absent a court order because it contained personal information.

Khan herself did not appear at the motion to compel hearing. Ezeoke asserted at various times during the hearing that Khan had lost her journal, and that, during her deposition, she was mistakenly referring to another journal that discussed the litigation but not the facts of the assault. Normally, an attorney must be under oath for his statements to be considered testimonial. *See Banda v. Garcia*,

955 S.W.2d 270, 272 (Tex. 1997) (per curiam). However, the opponent of the testimony can waive the oath requirement by failing to object when the opponent knows or should have known that an objection is necessary. *See Approximately $30,400 v. State*, No. 14-07-00342-CV, 2008 WL 4472931, at *3 (Tex. App.—Houston [14th Dist.] Oct. 7, 2008, no pet.) (mem. op.). Even if Ezeoke's statements could have been taken as testimonial in this case, the trial court was free to believe, based on Khan's deposition testimony and Ezeoke's equivocal responses to discovery, that Khan actually possessed the requested journal and was refusing to produce it. Because the record supports a finding that Khan had violated the rules of discovery, we conclude that there is a direct nexus between the offensive conduct and the sanction imposed.[1]

The purposes of discovery sanctions are threefold: (1) to secure compliance with the discovery rules, (2) to deter other litigants from similar misconduct, and (3) to punish violators. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (orig. proceeding); *Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 379 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The sanctions here satisfy all three purposes. Khan testified that she had the requested journal, but then she failed to produce it. Ezeoke also claimed that he had a seen a journal, and yet he too produced nothing to opposing counsel.[2] The trial court could have

---

[1] The trial court appeared to struggle with sorting out the facts of this case. After reciting Khan's deposition testimony, the court openly questioned why she claimed to have a journal that she would not produce. The court also expressed difficulty with comprehending Ezeoke, who claimed that he had personally reviewed one journal, yet repeatedly asserted that Khan did not have any journals. Many of the problems in this case seem to be attributable to Ezeoke rather than Khan. Had Ezeoke refrained from his aggressive rhetoric and stated, professionally and without ambiguity, that Khan had lost the journal discussed in the deposition, there is a likelihood that sanctions could have been avoided altogether. Nevertheless, the trial court was free to find, based on this record, that Khan was responsible and deserving of sanctions.

[2] During the contempt hearing, Ezeoke changed his story and claimed that he never saw a journal.

determined that Khan was flouting the rules of discovery, and that she needed to be sanctioned to punish her violation and to deter others from following her example.

Defense counsel requested $750 in attorney's fees, claiming that he had spent approximately three hours prosecuting the motion to compel. This time included the preparation of the motion itself, as well as other efforts spent in arranging a hearing because Ezeoke was out of the country. The trial court reduced defense counsel's request to $400. Ezeoke produced no evidence contradicting the court's assessment of the appropriateness of these fees. Based on the record as a whole, we conclude that the assessment was not excessive and that the trial court did not abuse its discretion by imposing the discovery sanction. *Cf. Stromberger v. Turley Law Firm*, 315 S.W.3d 921, 924–25 (Tex. App.—Dallas 2010, no pet.) (reduced discovery sanction of $5,300 was not excessive where evidence showed that sanctioned party ignored a subpoena and delayed efforts to take a deposition, causing more than twenty-six hours of attorney's fees).

Khan's third issue is overruled.

## DISMISSAL WITH PREJUDICE

We turn now to Khan's first issue, which challenges the trial court's dismissal order. Valliani's motion to dismiss did not cite any legal rule for dismissing Khan's suit with prejudice. The trial court's final order is also silent on the source of its dismissal power. Because the record is unclear as to the legal theory for dismissal, we review whether the trial court had the power to dismiss under Rule 215, under its general contempt power, or under its inherent authority to manage its own docket. The court's order will be affirmed if it was proper under any legal theory supported by the record. *See Bilnoski v. Pizza Inn, Inc.*, 858 S.W.2d 55, 58 (Tex. App.—Houston [14th Dist.] 1993, no writ).

9

**Rule 215**

If a party disobeys an order to compel, the trial court may enter an order "striking out the pleadings or parts thereof . . . or dismissing with or without prejudice the action or proceedings." *See* Tex. R. Civ. P. 215.2(b)(5). As with other discovery sanctions, the court's dismissal order must be "just" under the circumstances.

Khan asserts that the dismissal order runs afoul of *TransAmerican* because it is excessive, and therefore unjust. In *TransAmerican*, the Texas Supreme Court held that death penalty sanctions are warranted only if a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.* at 919.

Generally, courts will uphold the use of death penalty sanctions if a party acts in flagrant bad faith, such as by destroying or fabricating evidence that is material to the case. *See, e.g.*, *Cire*, 134 S.W.3d at 841 (party destroyed important audio tapes); *JNS Enter., Inc. v. Dixie Demolition, LLC*, 430 S.W.3d 444, 456 (Tex. App.—Austin 2013, no pet.) (parties produced false contract documents). Actions that callously disregard the rules of discovery warrant a presumption that the actor's claims are meritless because the very purpose of discovery is "to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *See Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding), *overruled on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding).

Here, Khan's failure to pay $400 in attorney's fees reveals nothing about the truth or merit of her claims. *Cf. Hamill v. Level*, 917 S.W.2d 15, 17 (Tex. 1996) (per curiam) (death penalty sanctions not justified where plaintiff made an untimely discovery response and failed to pay $200 in attorney's fees). Although

10

Khan had several months to pay the fee and she had been warned at least once about the failure to do so, we cannot say that her behavior, even if done in flagrant bad faith, warrants the severest of civil sanctions. *See Fletcher v. Blair*, 874 S.W.2d 83, 85–86 (Tex. App.—Austin 1994, writ denied) (death penalty sanctions not justified, even though plaintiff had lied about her education and income, where lies did not directly relate to the underlying claim for personal injuries).

Valliani contends that this is an exceptional case where sanctions should be upheld. Valliani relies primarily on *Gonzales v. Conoco, Inc.*, 722 S.W.2d 247 (Tex. App.—San Antonio 1986, no writ), a case that was decided under very similar facts. There, the court of appeals affirmed the use of death penalty sanctions when the plaintiffs failed to timely pay more than $2,500 in attorney's fees, which had previously been assessed as a sanction for discovery abuse. *Id.* at 250. *Gonzales* was issued several years before the Texas Supreme Court's decision in *TransAmerican*, and it contains no discussion of the limits on a trial court's power to dismiss a suit. Likewise, there is no analysis that explains, or concludes, that a party's failure to pay attorney's fees justifies a presumption that the party's claims lack merit. We decline to follow *Gonzales* to the extent it relies on standards that predate *TransAmerican* and its progeny, which are binding on this court.

If the trial court exercised its statutory power under Rule 215 by dismissing Khan's suit, then the dismissal order is unjust. Khan's failure to pay a fee of $400 does not justify a presumption that her claims lack merit. The trial court should have considered lesser sanctions, such as abating the case until the fee was paid, or including payment of the fee in a final judgment. The dismissal cannot be supported under Rule 215.

11

**Contempt Power**

Because it is unclear whether the trial court actually intended to dismiss Khan's suit under Rule 215, we next consider whether dismissal was proper as an order in contempt. Generally, decisions in contempt proceedings may not be reviewed by an appellate court, even where a party seeks to appeal the contempt order along with an appealable judgment. *See Metzger v. Sebek*, 892 S.W.2d 20, 54 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, if the trial court's judgment does not come within the confines of a true contempt order, then it should be recharacterized. *See Galtex Prop. Investors, Inc. v. City of Galveston*, 113 S.W.3d 922, 927 (Tex. App.—Houston [14th Dist.] 2003, no pet.). It is not the form of the court's order, but the character and function of the order that determines its classification. *See Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992).

A court has the inherent power to enforce its orders through contempt proceedings. *See Ex parte Gorena*, 595 S.W.2d 841, 845 n.2 (Tex. 1979) (orig. proceeding). A court can exert its contempt power through two types of contempt orders—civil and criminal. *See Ex parte Hawkins*, 885 S.W.2d 586, 588 (Tex. App.—El Paso 1994, orig. proceeding). Criminal contempt orders and civil contempt orders serve distinct purposes. A criminal contempt order is used to punish a party for disobedience of a court order. *Id.* The maximum punishment that a district court can assess under its criminal contempt power is a fine of not more than $500, or confinement in the county jail for not more than six months, or both. *See* Tex. Gov't Code § 21.002(b).

A civil contempt order is used to coerce a party to comply with an order of the court, usually through a conditional penalty. *See Hawkins*, 885 S.W.2d at 588. There is no express statutory limit to the fine that a court can impose through a

12

civil contempt order. *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 667–68 (Tex. App.—Fort Worth 2001, pet. denied) (holding that civil contempt is not governed by Section 21.002 of the Government Code, citing *Ex parte Shaklee*, 939 S.W.2d 144, 145 n.2 (Tex. 1997) (orig. proceeding)). If a fine is assessed in a civil contempt order, the court cannot order it to be paid to a private litigant. *See Cannan v. Green Oaks Apartments, Ltd.*, 758 S.W.2d 753, 754 (Tex. 1998) (per curiam) ("[I]n a contempt proceeding a private party cannot recover damages for a violation of a court order."); *Cadle*, 50 S.W.3d at 669.

The trial court's dismissal order does not resemble either a criminal contempt order or a civil contempt order because it does not send Khan to jail or assess a fine against her. Instead, the dismissal order adjudicates the merits of Khan's claims and precludes her from bringing suit again. To the extent the trial court exercised its contempt power by issuing the order to dismiss, we conclude that the court exceeded its authority.

## Inherent Authority

Because the court warned Khan, *sua sponte*, that her case would be dismissed if she failed to pay the $400 sanction, we also examine a trial court's inherent authority to dismiss a case.

A trial court has the inherent authority to manage its own docket and dismiss a case for want of prosecution. *See Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999); *Kadi v. New Tech Eng'g, LP*, No. 14-12-00872-CV, 2013 WL 2386654, *2 (Tex. App.—Houston [14th Dist.] May 30, 2013, pet. denied) (mem. op.). Here, however, there is no indication that Khan had abandoned her claims. The trial court specifically found that dismissal was warranted because Khan had failed to obey the court's orders. Based on the court's oral statements at the hearing on the motion to dismiss, the court's ruling seems to have been

13

motivated entirely by Khan's failure to pay a fee. Thus, if the trial court correctly dismissed the case through its inherent authority, its ruling cannot be supported by a failure to prosecute. *See also Frazier v. Progressive Cos.*, 27 S.W.3d 592, 594 (Tex. App.—Dallas 2000, pet. dism'd) (generally, a dismissal for want of prosecution is done without prejudice, not with prejudice).

A trial court also has the inherent authority to impose sanctions on its own motion. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding). We normally afford a trial court wide discretion when assessing appropriate sanctions. *See Chrysler Corp.*, 841 S.W.2d at 852–53; *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Sanctions, including orders providing for dismissal, can be appropriate when a party fails to comply with discovery requests or fails to provide or permit discovery. *See Saxton v. Daggett*, 864 S.W.2d 729, 733–34 (Tex. App.—Houston [1st Dist.] 1993, no writ) (citing Tex. R. Civ. P. 215).

This court has previously recognized that there are limits to a trial court's inherent authority to dismiss a case. In *Stubblefield v. Stubblefield*, we held that a trial court had no inherent authority to dismiss a case when a party failed to pay the opposing side $672 as a reimbursement for travel expenses. *See* 818 S.W.2d 221, 222 (Tex. App.—Houston [14th Dist.] 1991, no writ). Similarly, in *In re N.R.C.*, we held that a trial court abused its discretion by striking all of a party's witnesses in a parental-termination suit when the party failed to pay interim attorney's fees to an attorney ad litem. *See* 94 S.W.3d 799, 808–09 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Although the sanctions in *N.R.C.* did not technically result in a dismissal order, we concluded that the sanctions were case-determinative because they effectively "eviscerated" the party's ability to present the merits of her defense. *Id.* at 810. We also held that the sanctions were

14

inappropriate because they were imposed "for behavior wholly unrelated to discovery." *Id.* at 809.

Consistent with *Stubblefield* and *N.R.C.*, we conclude that the trial court had no inherent authority to dismiss Khan's suit for failing to pay the $400 discovery sanction. The court abused its discretion by doing otherwise.

## CONCLUSION

We need not address Khan's remaining issue regarding the motion for continuance. We sustain Khan's first issue, and hold that the trial court exceeded its statutory authority and its inherent authority by dismissing Khan's suit with prejudice. The trial court's dismissal order is reversed, and the cause is remanded for additional proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison, and McCally.