In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00053-CV**
_____

**IN RE COMMITMENT OF KENNETH WAYNE TERRY**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-06-06683 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Kenneth Wayne Terry as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014). A jury found that Terry is a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. In six appellate issues, Terry challenges the denial of his motion to recuse the trial judge, for discovery, and to exclude a witness, as well as other evidentiary rulings. We affirm the trial court's judgment.

1

## Motion to Recuse

In issues one and two, Terry challenges the denial of his motion to recuse the trial judge. Terry moved to recuse Judge Michael T. Seiler on grounds that his impartiality could reasonably be questioned and he had a personal bias or prejudice concerning the subject matter of the case. Judge Seiler denied the motion and referred the case to the assigned judge, who also denied the motion. We review the denial of a motion to recuse under an abuse of discretion standard. *In re Commitment of Winkle*, 434 S.W.3d 300, 310 (Tex. App.—Beaumont 2014, pet. filed).

We first address the State's contention that Terry failed to timely file his motion to recuse. A motion to recuse "must not be filed after the tenth day before the date set for trial" unless, before that date, movant neither knew nor reasonably should have known that "the judge whose recusal is sought would preside at the trial or hearing[]" or "the ground stated in the motion existed." Tex. R. Civ. P. 18a(b)(1)(B). The "last day of the period so computed is to be included[.]" Tex. R. Civ. P. 4; Tex. Gov't Code Ann. § 311.014(a) (West 2013).

The case was set for trial on November 10, 2014. Terry timely filed his motion on October 31, 2014, the last day of the ten-day period. *See* Tex. R. Civ. P. 18a(b)(1)(B); *see also* Tex. R. Civ. P. 4; Tex. Gov't Code Ann. § 311.014(a). He

filed an amended motion on November 10. The assigned judge ruled on the amended motion without objection from the State. Absent "a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). Thus, we assume that the assigned judge granted Terry leave to file the amended motion. *See id; see also* Tex. R. Civ. P. 63.

In issue one, Terry challenges the assigned judge's exclusion of a photograph of Judge Seiler's campaign sign from evidence at the recusal hearing. The sign states, "A prosecutor to judge the predators[.]" The assigned judge excluded the photograph because Terry had no authenticating evidence. On appeal, Terry maintains that the sign was self-authenticating. Assuming, without deciding, that the assigned judge abused her discretion by excluding the photograph, we recently explained that the slogan on Judge Seiler's sign could be viewed as "referencing Judge Seiler's resume as a former prosecutor—not as a promise to act in a biased manner in deciding cases assigned to the court, or to act in a biased manner regarding any individual case." *Winkle*, 434 S.W.3d at 312. Accordingly, we cannot conclude that Terry suffered any harm from exclusion of the photograph. *See* Tex. R. App. P. 44.1(a)(1). We overrule issue one.

In issue two, Terry maintains that Judge Seiler has a "deep-seated bias" against respondents in civil commitment proceedings and should have been recused. A judge must be recused when his "impartiality might reasonably be questioned[]" or he has a "personal bias or prejudice concerning the subject matter or a party[.]" Tex. R. Civ. P. 18b(b)(1), (2). The complaining party "must show that a reasonable person, with knowledge of the circumstances, would harbor doubts as to the impartiality of the trial judge, and that the bias is of such a nature and extent that allowing the judge to serve would deny the movant's right to receive due process of law." *Winkle*, 434 S.W.3d at 311.

In his recusal motion, Terry cited the following as evidence of bias:

During a videotaped speech to the Texas Patriots PAC in March 2013, Judge Seiler utilized a photograph of fictional serial killer Hannibal Lector and commented that (1) he had tried and committed over 200 individuals, (2) none of the individuals that came before him had been released into the community, (3) individuals in civil commitment are "psychopaths," (4) he keeps a gun in his lap during court proceedings, and (5) if the Legislature amended the SVP statute to remove the right to a jury trial, he could "get through all 35,000 sex offenders pretty quickly[.]"

. . .

According to a newspaper article, during an address to the Montgomery County Republican Women in September 2011, Judge Seiler stated that he deals "with 50, usually pedophiles, that are about to be released from prison," he has never released anyone, all the cases he has heard have resulted in civil commitment, research shows

4

that castration does not stop predators because of mental illness, and "[t]he castration would have to kind of occur at neck level[.]"

. . .

According to a November 2011 newspaper article discussing Judge Seiler's re-election campaign, Judge Seiler stated that he conducted more than forty trials in 2011 and all resulted in commitment and that he's "pretty proud of that record[.]"

Terry also relied on two previous cases in which Judge Seiler was recused.

In *Winkle*, we addressed an argument that Judge Seiler should have been recused for some of the same reasons raised by Terry. *See Winkle*, 434 S.W.3d at 311. We stated:

While Judge Seiler's campaign slogan, taken with the newspaper accounts of his comments, may raise a serious question about his fairness as a judicial officer, there was no evidence before the assigned judge that Judge Seiler had worked as a prosecutor in any matters related to SVP cases generally, had prosecuted any of the individuals involved in SVP cases for any crimes, or that Judge Seiler, in handling trials of sexually violent predators, had been unable to separate his role as a judicial official from that of his former role as an assistant prosecutor.

*Id*. at 312. We held that the assigned judge could reasonably conclude that Winkle failed to demonstrate such bias that Judge Seiler could not provide Winkle with a fair trial. *Id*. at 313.

Terry argues that, in addition to the evidence Winkle relied on, he also relies on Judge Seiler's videotaped speech. He also points to a public reprimand of Judge

Seiler by the Texas Commission on Judicial Conduct, in which the Commission found that:

> Judge Seiler's presentation before the Texas Patriots PAC could cause a reasonable person to perceive that Judge Seiler would not be fair and impartial while presiding over civil commitment proceedings, in violation of Canon 4A(1) of the Texas Code of Judicial Conduct. Moreover, Judge Seiler's public comments about specific offenders whose cases were subject to his court's continuing jurisdiction, did suggest to a reasonable person how he would rule when those individuals come before the court in future proceedings, in violation of Canon 3B(10) of the Texas Code of Judicial Conduct. Because Judge Seiler was recused from several civil commitment cases as a direct result of his presentation before the Texas Patriots PAC, the Commission concludes that his extrajudicial conduct interfered with the proper performance of his duties, in violation of Canon 4A(2) of the Texas Code of Judicial Conduct.

Public Reprimand and Order of Additional Education of Michael Thomas Seiler, District Court Judge, Nos. 12-0737-DI; 12-1143-DI; 13-0027-DI; 13-0235-DI; 13-0373-DI; 15-0129-DI; 15-0374, 6-7 (Tex. Comm'n Jud. Conduct Apr. 24, 2015).

Under an abuse of discretion standard, "we consider only the record at the time of the trial court's ruling, and not the evidence that was produced thereafter." *Khan v. Valliani*, 439 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The reprimand was issued after the assigned judge ruled on Terry's motion;

therefore, it was not before the assigned judge when she denied the motion.[1] Additionally, the assigned judge was entitled to presume that Judge Seiler would "divest himself of any previous conceptions, and . . . base his judgment, not on what he originally supposed but rather upon the facts as they are developed at the trial." *Lombardino v. Firemen's & Policemen's Civil Serv. Comm'n*, 310 S.W.2d 651, 654 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.). In doing so, as in *Winkle*, the assigned judge could reasonably conclude that Judge Seiler's statements did not constitute such bias or prejudice as to deny Terry a fair trial. *See Winkle*, 434 S.W.3d at 311. We overrule issue two.

Discovery

In issue three, Terry complains of the trial court's denial of his discovery requests regarding a consulting witness. According to the record, Dr. David Self and Dr. Sheri Gaines evaluated Terry. The State only designated Gaines as an expert. Terry filed various motions seeking disclosure of consulting experts. In response, the State argued that Self was a consulting-only expert. The trial court denied Terry's motions. At trial, Terry argued that Self was a dual capacity witness because he examined Terry. During an offer of proof, Terry testified that he was

---

[1]A violation of the Texas Code of Judicial Conduct "does not necessarily mean that the judge should be recused." *Ludlow v. DeBerry*, 959 S.W.2d 265, 270 (Tex. App.—Houston [14th Dist.] 1997, no writ).

evaluated by both Gaines and Self. He testified that Self asked him questions no one else had asked and he did not expect to see Self at trial.

On appeal, Terry argues that Self became a dual capacity witness because he "obtained firsthand knowledge of the facts concerning the litigation[,]" having personally evaluated Terry. We review a trial court's rulings on discovery matters under an abuse of discretion standard. *Gen. Tire v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). "The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are not discoverable." Tex. R. Civ. P. 192.3(e). "The factual knowledge and opinions acquired by an individual who is an expert and an active participant in the events material to the lawsuit are discoverable." *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554 (Tex. 1990). "[P]ersons who gain factual information by virtue of their involvement relating to the incident or transaction giving rise to the litigation do not qualify as consulting-only experts because the consultation is not their only source of information." *Id*.

Self did not testify at Terry's trial and the record does not indicate that the State's testifying expert witness, Dr. Gaines, reviewed Dr. Self's mental impressions or opinions. Moreover, Dr. Self evaluated Terry after the State filed its civil commitment petition. Nor does the record suggest that Dr. Self participated in

8

the events giving rise to the initiation of civil commitment proceedings. Because Dr. Self did not gain factual information by virtue of any involvement relating to the events giving rise to the litigation, we conclude that Dr. Self was not a dual capacity witness and the trial court did not abuse its discretion by refusing to order disclosure. *See id.*; *see also In re McDaniel*, No. 14-13-00127-CV, 2013 Tex. App. LEXIS 4052, at **10-11 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, orig. proceeding) (mem. op.) (Discovery requests were properly denied, as discovery was not sought from a witness who participated in events leading to the lawsuit and facts were obtained after the events leading to the lawsuit had occurred.). We overrule issue three.

## Motion to Exclude

In issue four, Terry maintains that the trial court erroneously denied his motion to exclude Dr. Gaines. In his motion, Terry argued that section 841.061(c) of the SVP statute allows the State to conduct a single evaluation, which it did via Dr. Self. Terry asserted that Dr. Gaines's evaluation violated section 841.061(c) and that, consequently, her testimony was inadmissible. The trial court denied the motion. We apply the abuse of discretion standard when reviewing the denial of a motion to exclude. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 727 (Tex. 1998).

9

In an SVP proceeding, "[t]he person and the state are each entitled to an immediate examination of the person by an expert." Tex. Health & Safety Code Ann. § 841.061(c) (West 2010). The respondent must "submit to all expert examinations that are required or permitted of the state to prepare for the person's trial." *Id*. § 841.061(f). In this case, the State filed a motion for an expert examination of Terry. When granting the motion, the trial court instructed that the examination should be conducted "[b]y the State's Experts, immediately if possible[.]" Dr. Self subsequently examined Terry, after which Dr. Gaines conducted her own examination.

On appeal, Terry asserts that section 841.061(c) "consistently refers, in the singular, to only one exam to which the State and the defense is entitled[]" and that "only one automatic examination was ever intended by the legislature[.]" According to Terry, if the State desired a second examination, the State should have filed a second motion seeking the trial court's permission to obtain another examination by a different expert. We review statutory construction issues *de novo*. *Lippincott v. Whisenhunt,* 462 S.W.3d 507, 509 (Tex. 2015). "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Id*. "We presume the Legislature

10

included each word in the statute for a purpose and that words not included were purposefully omitted." *Id*.

Section 841.061(c)'s use of "an" is not dispositive. The Code Construction Act expressly states, "The singular includes the plural and the plural includes the singular." Tex. Gov't Code Ann. § 311.012(b) (West 2013). Additionally, the statute's plain language does not prohibit additional examinations or require the State to seek permission. *See* Health & Safety Code Ann. § 841.061(c). The only limitation expressly imposed by section 841.061(c) is that examinations must be completed by a certain time period. *See id*. Had the Legislature intended to include additional limitations, it could have easily added language to this effect. *See Lippincott*, 462 S.W.3d at 509. We cannot "judicially amend a statute by adding words that are not contained in the language of the statute." *Id*. at 508.

Moreover, "[t]he SVP statute accomplishes dual interests that are possessed by the State: (1) the *parens patriae* power to provide care to its citizens who are unable because of emotional disorders to care for themselves; and (2) the police power to protect the community from the dangerous tendencies of some who lack volitional control over certain types of dangerous behaviors." *In re Commitment of Rushing*, No. 09-11-00268-CV, 2012 Tex. App. LEXIS 8140, at **5-6 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.). Allowing additional

11

examinations is consistent with the State's fulfillment of those interests. To read section 841.061(c) as prohibiting additional examinations would be contrary to the statute's purpose, which is to "reduce the risk of those who are behaviorally predisposed to sexually violent conduct." *In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). For these reasons, we reject Terry's contention that section 841.061(c) is limited to a single examination. The trial court did not abuse its discretion by denying Terry's motion to strike Dr. Gaines. *See Gammill*, 972 S.W.2d at 727. We overrule issue four.

Evidentiary Rulings

Terry's fifth and sixth issues challenge the trial court's evidentiary rulings. "We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see In re Commitment of Salazar*, No. 09-07-345 CV, 2008 Tex. App. LEXIS 8856, at *19 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). We will not reverse unless the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1).

In issue five, Terry contends that the trial court improperly allowed Dr. Gaines to testify to Terry's truthfulness. When asked why she relies on certain records, Gaines testified:

These documents are important. They're very important in a forensic case because in a forensic case, as opposed to in my regular clinical practice, the person I'm evaluating did not present themselves to me asking for help. So it's conceivable that that person might not be giving me all of the information.

Terry objected pursuant to Texas Rule of Evidence 702 on grounds that Gaines's opinion as to truthfulness was not helpful. The trial court overruled the objection. Gaines proceeded to testify that:

The person didn't come to me asking for help, identifying that they have a problem and wanting treatment. So it's important to have collateral information. Also, a lot of things that we're here talking about today happened decades ago. So what we remember today might not be entirely accurate about what happened decades ago. So it's important to look at those documents that were generated at that time.

When asked what type of research Gaines reviews to identify risk factors, she explained:

There's [a] lot of research out there. The research on sex offending is kind of tough to gather, because as you might imagine, people aren't entirely truthful when it comes to their sexual behaviors.

Terry again objected based on Rule 702 and the trial court overruled the objection.

Assuming, without deciding, that the trial court abused its discretion, any error is harmless. The jury heard Terry's responses to the State's request for admissions, in which he acknowledged convictions for two aggravated rapes, indecency with a child, offenses for indecent exposure, two attempted sexual

13

assaults, and other non-sexual offenses. Terry admitted that he is a sex offender. Gaines testified that Terry suffers from a behavioral abnormality. She identified Terry's risk factors as sexual deviancy and antisocial behavior, which encompass minimization, violence, offenses against strangers, poor insight, offenses committed while on probation and parole, range of victims, offenses committed in a public place, number of offenses and victims over a period of time, and sexual preoccupation. Gaines diagnosed Terry with antisocial personality disorder, sexual sadism disorder, exhibitionistic disorder, and substance use disorder. In light of Terry's admissions and criminal history, and Gaines's testimony, we conclude that Terry has not demonstrated that the trial court's judgment turns on the complained-of evidence. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted."). Because the record does not demonstrate that admission of the complained-of evidence probably caused the rendition of an improper judgment, we overrule issue five. *See* Tex. R. App. P. 44.1(a)(1).

In issue six, Terry challenges the denial of his objection to Gaines's testimony that Terry is dangerous because he has hepatitis C. Gaines testified that Terry suffers from hepatitis C. The following exchange subsequently occurred:

14

Gaines: It's transmitted in many ways, some of which we're not entirely sure about. But one way in which it can be transmitted and we are sure about is by blood and body fluids. So it can be transmitted sexually.

State: And what are the potential consequences of contracting hepatitis C?

Gaines: Some people who have hepatitis C get treatment and have no further problems. Some people continue to have hepatitis C and the treatment is --

Terry's Counsel: Your Honor, at this time I object to relevance.

Trial Court: I don't know what the relevance is, but get to it quickly, would you?

State: Yes, Your Honor.

Trial Court: Not being a medical expert and really understanding hepatitis C, so --

Terry's Counsel: Thank you, Your Honor.

Gaines: So that can be really serious or it can be not so serious. It can be so serious that you die and it can be transmitted sexually.

State: Thank you. Moving on to Mr. Terry's specific offenses -- actually, briefly, why is it relevant in this case?

Gaines: It's relevant in this case because it makes Mr. Terry dangerous. Not only is he dangerous because he's assaulted people, he's raped people, but he now has hepatitis C. I'm not sure how long he's had it. But he was diagnosed in prison with hepatitis C which could be [a] further danger to potential victims.

15

To preserve error for appellate review, the complaining party must timely and specifically object to the evidence each time it is offered or obtain a running objection. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235-36 (Tex. 2007). Terry did not object when Gaines testified as to why Terry's medical condition makes him dangerous. Nor does the record indicate that Terry requested a running objection to Gaines's testimony regarding Terry's medical condition. Under these circumstances, issue six is not preserved for appellate review and is overruled.[2] *See id.* We affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 31, 2015
Opinion Delivered September 10, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[2]Even had error been preserved, given the evidence in the record, we cannot say that the admission of Gaines's testimony probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1).