

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00264-CV

_____

ESTATE OF FELIPE A. RADELAT, DECEASED

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 1994-0001187-1-A

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellee Lourdes Radelat sued her mother and brother, appellants Ana and Andrew Radelat, over their handling of an estate matter. Appellants alleged that the suit was barred by limitations, but the trial court struck that defense when it rendered death-penalty sanctions.

On appeal, appellants cite the rule that before death-penalty sanctions may issue, the misconduct must justify a presumption that the sanctioned party's claim or defense lacks merit. Appellants argue that because Lourdes's suit was apparently untimely, the merit of their limitations defense can cut through the severity of any misconduct and save the case from death-penalty sanctions.

We hold that appellants' misconduct shows that this limitations defense lacks merit. The nature of the misconduct—deception of the court, discovery concealment, and violations of a temporary injunction, *inter alia*—goes hand in hand with a belief that appellants fraudulently concealed the truth about the estate from Lourdes. In particular, appellants' efforts to thwart discovery of how they handled estate matters are relevant to whether they also concealed estate matters from Lourdes. That fraudulent concealment has the power to toll limitations, thus justifying a presumption that the limitations defense lacks merit. We therefore affirm the death-penalty sanctions.

## I. BACKGROUND

On October 29, 2012, Lourdes filed suit against appellants. The petition explained that Lourdes's father Felipe Radelat died in March of 1994. In his will, Felipe

provided for the creation of two trusts to contain the bulk of his assets. According to Lourdes, $600,000 of the estate's assets should have been put in the "Family Shelter Trust," and the rest should have been put in the "Marital Deduction Trust." Felipe named his wife Ana as the executor of his estate, and he named Ana, Lourdes, and his son Andrew as co-trustees for the trusts. It is undisputed that between 1994 and 2012, Ana did not fund the trusts.

Lourdes alleged that she did not know she was meant to be co-trustee and beneficiary of the trusts; she only discovered this fact in 2012, when appellants attempted to sell real estate that rightfully belonged to one of the trusts. Up until that point, Lourdes said, appellants had withheld the will from her and misled her about its content. Lourdes alleged that appellants breached their fiduciary duties by concealing Felipe's estate plan, failing to properly fund the trusts, and self-dealing with trust property, among other misdeeds. Lourdes demanded a statutory accounting for the trusts.

Appellants filed a general denial and asserted counterclaims and several defenses, including limitations. Lourdes responded that fraudulent concealment should toll limitations. Also, Lourdes added her son Derek as a plaintiff in an attempt to defeat limitations. Meanwhile, the trial court granted a temporary injunction, which restrained appellants from using any funds belonging to the Family Shelter Trust or impairing the value of either trust, among other restrictions.

As the litigation wore on, Lourdes filed a motion to compel production of certain financial records. The motion was granted on November 13, 2014.

Two months later, Lourdes filed a motion for contempt and sanctions, alleging that appellants had disregarded the trial court's discovery order and violated the temporary injunction by collecting rent from a Miami house that belonged to the Family Shelter Trust. The trial court granted the motion, assessed attorney's fees of $1,400, barred appellants from using financial documents in support of their claims, and directed appellants to provide an accounting of any rent received from the Miami property.

Lourdes later filed a second motion for sanctions that complained of several more forms of misconduct by appellants. Lourdes explained that appellants delivered the accounting of rent seventy days after the court-ordered deadline and that when it was eventually delivered, the accounting was false. In the accounting, appellants claimed that they had not received any rental income from the Miami property. However, Lourdes submitted documents confirming that appellants had indeed rented out the property at a rate of $2,500 per month, with a $7,500 moving fee as well. The document explained that after this rental arrangement ended, appellants had allowed a friend to live there rent free, without approval of the court, in exchange for repairs to the property. Lourdes also submitted documents showing that appellants had listed the Miami property for sale in violation of the temporary injunction. Further, Lourdes offered proof that appellants failed to appear for depositions on multiple occasions,

twice for Ana and three times for Andrew. Finally, Lourdes submitted an affidavit from her attorney describing how Ana had consistently malingered in her litigation responsibilities. Attached were deposition transcripts in which Ana had repeatedly refused to answer questions even through an interpreter, claiming that she did not understand legal matters or the English language despite having lived in the United States for sixty years. However, the attorney affiant testified that at other points in her depositions, Ana had answered questions phrased in English without the aid of an interpreter, sometimes even responding in English, and Lourdes also submitted multiple English-language documents written by Ana. Later, Lourdes submitted testimony from Ana's former attorney explaining that she had participated in complex legal matters without the aid of an interpreter, all of which suggested that Ana did understand legal matters and the English language after all.

On December 16, 2015, the trial court ordered appellants to show cause why they should not be held in contempt. After granting appellants' request for a continuance, on January 13, 2016, the trial court once again ordered appellants to appear and show cause. The trial court then suggested and eventually ordered an independent medical examination of Ana. According to the trial court's findings, Ana was examined the same day and was found to be cognitively intact and physically stable.

The trial court rendered a second sanctions order on January 11, 2017, striking appellants' answer, and with it, their counterclaims and defense of limitations. The

order explained that this extreme sanction was warranted by several forms of misconduct:

- collecting rent in violation of the temporary injunction;

- attempting to sell the Miami property in violation of the temporary injunction;

- allowing a friend to live at the Miami property rent free, without permission of the court;

- submitting to the court a false accounting of rent for the Miami property and doing so seventy days after the court-ordered deadline;

- failing to provide a statutory accounting for the trusts even four years after Lourdes had demanded one;

- failing to produce financial records despite an order compelling production;

- failing to appear for multiple duly noticed depositions;

- violating the court's standing order requiring fiduciaries to be represented by counsel in that appellants appeared pro se for months after the withdrawal of their initial counsel; and

- as to Ana, refusing to participate in the legal process based on her repeated assertion that she did not understand legal matters or the

6

English language; the trial court believed that Ana was in fact a sophisticated investor who understood the legal system and the language, and that her claims to the contrary were "guile and artifice" in aid of a deliberate refusal "to cooperate with her counsel, the court, and court personnel."[1]

The court also incorporated detailed findings as to why the death-penalty sanction was directly related to appellants' offensive conduct, why the sanction was not excessive, why lesser sanctions would not have sufficed, and why appellants' conduct justified a presumption that their claims and defenses lacked merit.

After a hearing to prove damages, the trial court rendered a final judgment awarding Lourdes $1,145,401 in damages and $173,467 in attorney's fees and ordered all remaining trust assets distributed to Lourdes. This appeal followed.

## II.   STANDARD OF REVIEW

We review the imposition of sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The ruling will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.* at 839. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge

---

[1]The trial court also cited other supposed forms of misconduct that, upon our independent review, are not supported by the record and will therefore not be considered as support for the sanctions. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

in a similar circumstance does not demonstrate an abuse of discretion. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam). In reviewing sanctions orders, we are not bound by a trial court's findings of fact and conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

## III. DISCUSSION

At the outset, it is important to note what appellants have not challenged. Absent are many of the issues that are usually disputed in a death-penalty sanction case, for appellants have not argued that the death-penalty sanction exceeds many of the limitations on sanctions that are mandated by the rules of civil procedure and due process. *See TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Appellants have not argued that the trial court failed to test lesser sanctions or to persuasively explain why lesser sanctions would be ineffective. *See id.* They have not contended that the death-penalty sanction is out of proportion with the gravity of the offenses. *See id.* Appellants have not asserted that the sanction lacks a direct connection with the misconduct or that the misconduct should be punitively attributed to their counsel, not them. *See id.* And appellants have not challenged the evidence supporting the amount of damages that were eventually assessed or the reasonableness and necessity of attorney's fees. Because these things have not been challenged, they will not be considered here, for we may not reverse the judgment of a

trial court for a reason not raised in a point of error. *Davis v. Mueller*, 528 S.W.3d 97, 103 n.38 (Tex. 2017).

Rather, as appellants confirmed at oral argument,[2] they have raised a single challenge based on a single proposition of law:  as a general rule, before death-penalty sanctions may issue, the misconduct should justify the presumption that the claim or defense lacks merit.  *TransAm.*, 811 S.W.2d at 918.[3]  Appellants argue that if the underlying claim or defense appears to have great merit, as they contend their limitations defense does, then there can be no death-penalty sanction.  Appellants

---

[2]In their brief, appellants also included a short argument about why the sanction was excessive.  However, at oral argument, appellants abandoned this theory, and we therefore do not consider it.  *See Grupo TMM, SAB v. Perez*, 327 S.W.3d 357, 361 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (relying on representations at oral argument to define the scope of the outstanding issues and claims); *Kunz v. Van Buskirk*, No. 04-00-00704-CV, 2001 WL 855454, at *1 (Tex. App.—San Antonio July 31, 2001, no pet.) (not designated for publication) (op. on reh'g) (same).

[3]We do not believe that our duty to independently review the record stretches so far that we must make appellants' arguments for them and address other potential grounds for reversing the death-penalty sanctions that appellants have not raised.  *See Warwick Oil & Gas, Inc. v. FBS Props., Inc.*, No. 01-14-00290-CV, 2015 WL 3637988, at *4–5 (Tex. App.—Houston [1st Dist.] June 11, 2015, no pet.) (mem. op.) (analyzing only a single challenge based on the rule that the misconduct should justify a presumption that the claim lacks merit—and not other typical challenges to death-penalty sanctions—when it was the only argument raised by the appellant).  We believe these potential grounds are subject to waiver because parties may waive statutory and even constitutional rights.  *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 538 (Tex. 2019).  Therefore, while some sanction limitations are rooted in due process concerns, *see TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding), other sorts of due process limitations may be waived, and we see no reason that limitations on sanctions should be different.  *See, e.g.*, *McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 285 (Tex. 2018) ("Due process rights to notice and hearing prior to a civil judgment are subject to waiver.").

reason that because Lourdes's claims seem to fall outside limitations—at least based on the facts they have pleaded, if not proved—the merit of their limitations defense should preclude a death-penalty sanction. For two reasons, we disagree.

First, as we see it, the merits of the case itself are not before us. True, there are some cases where Texas courts have applied the logic that appellants advocate, using the apparent merits of the case to reverse a death-penalty sanction. For instance, in *Remington Arms Company v. Caldwell*, the jury rendered a verdict against a products-liability plaintiff, but after trial, the trial court nonetheless granted a mistrial and rendered death-penalty sanctions against the defendant. 850 S.W.2d 167, 169 (Tex. 1993) (orig. proceeding) (op. on reh'g). Writing for the court, Justice Cornyn reasoned that when the jury resolved the merits of the case in favor of the defendant, this defeated any presumption that the defendant's claims lacked merit, making death-penalty sanctions inappropriate. *Id.* at 171. Similarly, in *Chrysler Corporation v. Blackmon*, the court addressed a products-liability suit alleging that a vehicle's defects caused a collision, but the plaintiff admitted in a discovery response that another driver's negligence was also to blame for causing the collision. 841 S.W.2d 844, 850 & n.12 (Tex. 1992). Again writing for the court, Justice Cornyn reasoned that this admission undercut a presumption that the claims lacked merit: the plaintiffs had effectively admitted that there was merit in the defendant's comparative-fault defense, and because a death-penalty sanction would essentially treat this defense as meritless, the sanction could not stand. *Id.* Other courts have applied this thinking as well. *See, e.g.*, *In re TAH Invs.,*

10

*LLC*, No. 14-19-00161-CV, 2019 WL 2062923, at *5 (Tex. App.—Houston [14th Dist.] May 9, 2019, orig. proceeding) (mem. op.) (per curiam). Thus, appellants' thinking is not at all foreign to Texas law.

But unlike *Remington* and *Chrysler*, wherein the merits had already been resolved by trial and admission, respectively, here we have no concrete basis on which to judge the merits. This is not an appeal from summary judgment, a trial on the merits, or any other sort of exercise that truly assesses the worth of the sanctioned party's claims and defenses. At this juncture, the sole window we have into the merits is the parties' pleadings, which may or may not be true. Under Texas law, many questions must be satisfactorily answered before a death-penalty sanction may be rendered, but we do not believe that either due process or the rules of civil procedure require us to forecast how likely the sanctioned defendant would be to prevail in the absence of a sanction—and to do so based solely on the party's pleadings. Parties who severely offend the process of justice are not exempt from sanctions simply because they have the better pleadings.

Second, to the extent that appellants' conduct does place the merits before us, their course of action militates toward the conclusion that the limitations defense lacks merit. To justify a presumption that the claim lacks merit, the misconduct must, at a minimum, reveal some detrimental truth about the sanctioned party's claim or defense. *See Khan v. Valliani*, 439 S.W.3d 528, 535 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In *Khan*, for example, the court recognized that the failure to pay $400 in attorney's fees for contempt of court revealed nothing about the merits. *Id.* It was

simple dereliction, oriented toward financial concerns rather than the truth or falsity of the underlying claims.

Other forms of misconduct, though, may tell of the case's merit. Refusal to produce evidence that goes to the "heart of" the case may warrant the belief that full and fair disclosure would be damning for the refusing party. *Cire*, 134 S.W.3d at 841. Accordingly, "if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *TransAm.*, 811 S.W.2d at 918; *see Cire*, 134 S.W.3d at 841 (holding that death-penalty sanctions were justified by plaintiff's repeated refusal to produce critical audiotapes needed to dispute plaintiff's claim, by later destroying those tapes, and by misrepresenting the circumstances to the trial court).

The same might be said of pervasive and persistent obstruction of the discovery process in general. *See 5 Star Diamond, LLC v. Singh*, 369 S.W.3d 572, 579 (Tex. App.—Dallas 2012, no pet.) (concluding that prolonged general resistance to discovery, despite multiple orders compelling responses, justified death-penalty sanction); *Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705, at *12 n.10 (Tex. App.—Austin Nov. 10, 2010, pet. denied) (mem. op.) (holding that a pattern of noncompliance in the face of increasing sanctions was enough to justify presumption that merit was lacking); *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 322 (Tex. App.—San Antonio 2007, pet. denied) (holding that there was no abuse of discretion in striking the pleadings based on defendant's disregard of several orders compelling response and

12

monetary sanctions); *In re Zenergy, Inc.*, 968 S.W.2d 1, 6, 11 (Tex. App.—Corpus Christi–Edinburg 1997, orig. proceeding) (concluding that false testimony and pervasive concealment of information, despite orders compelling disclosure, justified death-penalty sanctions).

Courts have also considered violations of a temporary injunction in determining whether a presumption that the claim lacks merit was justified. *See Caron v. Smaby*, No. 01-15-00528-CV, 2017 WL 2471101, at *10, *12 (Tex. App.—Houston [1st Dist.] June 8, 2017, no pet.) (mem. op.); *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 171 (Tex. App.—Dallas 2011, pet. denied). And false statements to the court have been held to call for extreme measures as well. *See Redmond Legal Grp., PLLC v. Chatman*, No. 14-17-00835-CV, 2019 WL 4021930, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2019, no pet. h.) (mem. op.) (collecting cases).

In its order, the trial court found that each of these forms of misconduct—discovery abuses,[4] refusal to cooperate, violations of a temporary injunction meant to protect trust property, and deception of the court—had occurred, along with failure to produce an accounting and other misconduct. Each of these forms of misconduct generally favors the notion that appellants' defenses lack merit. In *In re Estate of Preston*,

---

[4]While we place greater emphasis on failure to produce documents despite an order compelling production, appellants' failure to comply with the deposition notices deserves attention as well, for a deposition notice upon a party has the same force as a subpoena, Tex. R. Civ. P. 199.3, and, by rule, noncompliance subjects a party to contempt sanctions. Tex. R. Civ. P. 176.8(a).

we held that death-penalty sanctions were fitting in light of a similar accumulation of misconduct: refusal to produce estate-related documents with no "justifiable excuse" and despite orders compelling production, failure to provide an accounting, intentional violations of an order protecting estate property, and other miscellaneous breaches of court orders and fiduciary duties. *See* 346 S.W.3d 137, 159–61 (Tex. App.—Fort Worth 2011, no pet.). We held that the appellants' "persistent and obstructive behavior" could reasonably be connected with a presumption that their claims lacked merit. *Id.* at 162. A similar connection is warranted here.

But beyond this general connection, we think appellants' misconduct speaks to the merits directly. Appellants' primary defense was limitations. To this, Lourdes pleaded fraudulent concealment, alleging that limitations should be tolled because appellants deceived her and hid the true nature of the will and the trusts from her. *See* *Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015). The nature of appellants' misconduct—a borderline fraud on the court—could have rationally persuaded the trial court that appellants also fraudulently concealed the truth from Lourdes. Appellants' misconduct might have convinced the judge that just as appellants provided the court with false information, they also provided Lourdes with false information concerning the nature of the will; that just as appellants withheld bank records, they likewise withheld the will from Lourdes; and that just as Ana acted with "guile and artifice" in pretending not to understand the litigation process in order to obstruct it, she acted with a similar intent in pretending not to understand her responsibilities under Felipe's

14

estate plan. Under this view, appellants' misconduct could have convinced the trial court that appellants fraudulently concealed the truth from Lourdes and, therefore, that appellants' limitations defense lacked merit.

While we might have decided the matter differently, *see Quixtar*, 315 S.W.3d at 31, we cannot say that the trial court acted wholly without reference to any guiding rules or principles in ruling as it did. *See Cire*, 134 S.W.3d at 839. We hold that the trial court did not abuse its discretion. Having resolved appellants' only challenge to the death-penalty sanction, we overrule appellants' sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: November 7, 2019